UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT TICKNOR, MATTHEW RUSSELL, and DANIEL CUTLER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ROUSE'S ENTERPRISES, L.L.C., a Louisiana Limited Liability Company,<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT - CLASS ACTION**<br>**JURY DEMANDED** |

**PRELIMINARY STATEMENT**

1. This is a consumer class action based upon Rouse's Enterprises, L.L.C.'s (hereinafter referred to as "Defendant" or "Rouse's") violation of section 1681c(g) of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), and the Fair and Accurate Credit Transactions Act ("FACTA") for failing to truncate the expiration date printed on receipts provided to the cardholder at the point of sales.

2. Plaintiffs bring this action for themselves and on behalf of all other persons similarly situated against Defendant, seeking statutory damages, punitive damages, costs and attorneys' fees, all of which are expressly made available by statute, as well as declaratory and injunctive relief and other legal and equitable relief as available under applicable law.

3. FACTA was intended to protect consumers from identity thieves and to limit the number of opportunities for identity thieves to pick off' key card account information.

4. The purpose of the expiration date truncation requirement is to prevent identity theft. The Federal Trade Commission estimated that over 9 million persons each year have their identity assumed for financial gain, causing losses in excess of $50 billion.

5. The truncation section of the FCRA was thus designed to combat the rising tide of identity theft experienced throughout the nation in recent years. Such a practice, if followed, reduces an identity thief's ability to obtain valuable account information relating to a consumer.

6. Despite the simple steps necessary to comply, and despite abundant notice, Defendant has simply chosen to ignore complying with the FCRA and FACTA. As such, consumers who purchase goods from Defendant do not receive the full benefits of section 1681c(g) and are uniformly burdened with an elevated risk of identity theft.

7. A plaintiff need not demonstrate that he or she was a victim of identity theft to prevail on a claim for statutory damages under the FCRA upon a showing that a defendant willfully violated 15 U.S.C. § 1681c(g).

8. The FCRA provides that any "person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to 1) statutory damages of not less than $100 and not more than $1,000; 2) punitive damages; and, 3) attorney fees and costs." 15 U.S.C. § 1681n(a).

**JURISDICTION AND VENUE**

9. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) for the reason that Defendant retailer does substantial business in this district. Further, Defendant's places of business visited by Plaintiffs giving rise to Plaintiffs' claims are located in New Orleans, Louisiana.

**PARTIES**

11. Plaintiff, Robert Ticknor, is a natural person who resides in Orleans Parish, Louisiana.

12. Plaintiff, Matthew Russell, is a natural person who resides in Orleans Parish, Louisiana.

13. Plaintiff, Daniel Cutler, is a natural person who resides in Orleans Parish, Louisiana.

14. Defendant Rouse's is a Louisiana Limited Liability Company whose registered office is listed as 1301 St. Mary St., Thibodaux, Louisiana 70301. Rouse's operates under the name Rouse's Markets and owns and operates multiple grocery stores throughout southern Louisiana and Mississippi, with most of its stores in the Eastern District of Louisiana.

**FACTUAL ALLEGATIONS**

15. In 2003, FACTA was enacted by Congress and signed into law by President George W. Bush. One of FACTA's primary purposes was to amend the FCRA through the addition of identity theft protections for consumers.

16. One FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or debit account from a receipt which the consumer discarded or lost. Codified in 15 U.S.C. § 1681c(g), this provision provides:

> Except as otherwise provided in this subsection, no person that accepts credit or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

("Receipt Provision").

17. Though enacted on December 3, 2003, FACTA had a two-tiered effective date. For cash registers first placed into use after January 1, 2005, FACTA was immediately effective. For cash registers in use on January 1, 2005, FACTA was effective December 4, 2006. *See* 15 U.S.C. § 1681c(g)(3).

18. Thus, FACTA gave companies a generous three-year window within which to comply with the Receipt Provision.

19. Notwithstanding the fact that it had years to comply, Defendant continues to issue receipts at the point of sale or transaction that contain more than 5 digits from the credit card or account number or the expiration date, in direct violation of the Receipt Provision.

20. Even prior to FACTA's enactment, the payment card industry began requiring merchants to comply with requirements that were at least as rigorous as FACTA's requirements. For example, upon information and belief, (i) effective July 1, 2003 for new machines, Visa instituted a receipt truncation policy limiting the information on receipts given to cardholders to the last four digits of the account number, and requiring the expiration date to be eliminated altogether, and (ii) effective July 1, 2006 for existing machines, it mandated the same truncation requirements. Upon information and belief, these requirements were (and continue to be) set forth in a manual entitled *Rules For Visa Merchants, Card Acceptance and Chargeback Management Guide*.

21. Defendant accepts Visa cards and is a party to a contract requiring compliance with the these truncation requirements, and thus upon information and belief had knowledge of FACTA and the Receipt Provision.

22. Further, upon information and belief, the payment industry's truncation requirements had been the subject of extensive publicity for several years. For example, Global Payments ("Global") is one of the world's largest transaction processors, providing credit card processing and assorted other financial services to merchants in the United States and abroad. In its Merchant Connection newsletter dated Spring 2004, Global informed merchants that "[n]ew regulations by MasterCard and Visa prohibit listing the cardholder's personal information on the

credit card draft, and require the card expiration date to be suppressed and the account number be truncated on the cardholder's copy of electronically printed receipts." And in 2007, Global issues a report entitled *Card Account Information Truncation Requirements: Suppression of Account Information on Transaction Receipts*. That report contained a compendium of truncation requirements mandated by (i) Mastercard and Visa, (ii) FACTA, and (iii) various state laws.

23. Similarly, Heartland Payments Systems, Inc. ("Heartland") provides credit card processing services similar to Global's, but on a smaller scale. In 2003, Heartland disseminated a pamphlet warning merchants that, in printing credit card receipts, they would soon be required to (i) truncate all but the last four digits of the account numbers, and (ii) eliminate the expiration date. Thereafter, in 2006, Heartland disseminated another pamphlet warning merchants that the cardholder's receipt should include only the last 4 or 5 digits of the account number, and should not include the card's expiration date.

24. Thus, upon information and belief, Defendant further had knowledge of FACTA and the Receipt Provision through publications and other communications from payment system vendors.

25. Likewise, many grocer and retail trade associations apprised their merchant members of FACTA's account number truncation and expiration date elimination requirements. There was, therefore, no shortage of public disclosure on the matter.

26. Upon information and belief, Defendant had knowledge of FACTA and the Receipt Provision through trade association notifications.

27. The national media also widely publicized FACTA's requirements. For example, and April 16, 2007, the National Law Journal printed a story describing FACTA's requirements

and reporting on litigation over non-compliance with the requirements. That article expressly noted that, to comply with FACTA, printed receipts may not contain more than the last five digits of a credit or debit card number and cannot include the card's expiration date. *See* Nat. Law Jour., In Focus Complex Litigation, *Credit Security Statute Spins Off Class Actions* (Apr. 16, 2007). Likewise, on April 28, 2007, the Wall Street Journal published a similar story. That story stated that, as of December 4, 2006, "retailers are prohibited from printing more than the last five digits of a credit-card or debit-card account number on receipts that are handed to customers [and] [t]he receipts also can't include the account's expiration date. Wall St. J., *Retailers Whose Slips Show Too Much Attract Lawsuits* (Apr. 28, 2007). Further, the story notes, the FTC's regional offices "are working with retailers to remind them of the law." *Id.*

28. In anticipation of the December 4, 2006, deadline, many credit card companies, including, but not limited to, VISA and MasterCard advised companies of the need for compliance with the Receipt Provision. Additionally, many credit card companies, such as VISA and MasterCard, implemented policies well in advance of the effective date to ensure compliance with the Receipt Provision, by themselves, as well as that of their customers. For example, on March 6, 2003, VISA's CEO, Carl Pascarella, held a press conference on Capitol Hill with Senators Dianne Feinstein, Judd Gregg, Jon Corzine, and Patrick Leahy and publicly announced VISA USA's new truncation policy to protect consumers from identity theft.

29. The vast majority of persons who print credit or debit card receipts comply with the Receipt Provision, including the vast majority of grocers in the same area that Defendant operates that are far, far smaller than Defendants.

30. In May 2007, the Federal Trade Commission ("FTC") issued an FTC Business Alert entitled "Slip Showing Federal Law Requires All Business to Truncate Credit Card

Information on Receipts" ("Alert"). The Alert explicitly stated, "You may include no more than the last five digits of the card number, and you must delete the card's expiration date. For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:

ACCT: ***********12345; EXP: ****"

The Alert even goes on to state, "Why is it important for businesses to comply with this law? In addition, the law allows consumers to sue businesses that don't comply and collect damages and attorney fees."

31. Upon information and belief, Defendant was exposed to the FTC business alert, or other government communications that made Defendant aware of FACTA and the Receipt Provision.

32. In May 2008, Congress expanded the window for merchants to comply with the expiration date truncation provisions, passing the FACTA Clarification Act. The law noted that a failure to print expiration dates between December 4, 2004 and May 20, 2008, would not amount to a willful violation of FACTA. Needless to say, this amnesty window has closed, and Defendant has failed to comply with the law <u>nearly eight years after its enactment and over four years since the end of the amnesty period</u>.

33. Information continued to be provided to merchants like Defendants to ensure compliance with FACTA. For example, in June 2008, Chase Paymentech (a/k/a First Date) provided in its billing statement to its merchant clients who accepted credit cards and debit cards a detailed explanation of the merchant's duties to truncate the expiration date under the FACTA Clarification Act of 2008.

34. On information and belief, the entity that had provided Defendant's point of sales terminals and software would have made Defendant aware of its obligation to truncate receipts prior to the receipts being provided to Plaintiffs and the Class.

35. Most of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA be programming their card machines and devices to comply with the truncation requirement. Defendant could have readily done the same at a minimal cost.

36. As such, on information and belief, Defendant would have actual notice of the truncation requirements under FACTA.

37. Defendant's practice not only violates the federal law, it exacts harm to Plaintiffs and the Class by exposing consumers' sensitive account information and subjecting each consumer to an ongoing and elevated risk of becoming the victim of identity fact, by virtue of the non-redacted information printed on the receipt.

38. Plaintiffs were thus damaged by Defendant's failure to follow the Receipt Provision.

**THE EXPERIENCE OF THE REPRESENTATIVE PLAINTIFFS**

39. On April 26, 2012, Plaintiff Robert Ticknor shopped at one of Defendant's stores, located at 400 North Carrolton Avenue, New Orleans, Louisiana 70119. To pay for his groceries, Plaintiff Ticknor used his personal credit card.

40. Following the transaction, Plaintiff Robert Ticknor received a receipt, which included the expiration date of his credit card.

41. On May 3, 2012, Plaintiff Matthew Russell shopped at one of Defendant's stores, located at 701 Royal Street, New Orleans, Louisiana 70116. To pay for his groceries, Plaintiff Russell used his personal credit card.

42. Following the transaction, Plaintiff Matthew Russell received a receipt, which included the expiration date of his credit card.

43. On May 6, 2012, Plaintiff Daniel Cutler shopped at one of Defendant's stores, located at 701 Baronne Street, New Orleans, Louisiana 70113. To pay for his groceries, Plaintiff Cutler used his personal credit card.

44. Following the transaction, Plaintiff Cutler received a receipt, which included the expiration date of his credit card.

45. Upon information and belief, this were not isolated incidents---rather, Rouse's uniformly fails to redact expiration dates at their stores across Louisiana and Mississippi. This therefore appears to be a uniform policy that is perfectly suited for class resolution.

46. At all times relevant hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, under the direct supervision and control of the Defendant.

47. At all times relevant hereto, the conduct of the Defendant, as well as that of its agents, servants, and/or employees, was willful within the meaning of the FCRA, deliberate, intentional, reckless, and in grossly negligent disregard for federal laws and the rights of Plaintiffs and other persons similarly situated.

## CLASS ACTION ALLEGATIONS

48. Plaintiffs bring this action individually and as a class action for Defendant's violation of section 1681c(g) of the FCRA, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Class:

> All persons in the United States to whom, from two years prior to the filing of this Complaint, and continuing through resolution of this case (the "Class Period"), Defendant provided an electronically printed receipt at the point of sale or transaction on which Defendant printed or caused to be printed the expiration date of the person's credit or debit card.

49. Specifically excluded from the Class are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases of all their claims for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

50. The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class numbers is known only to Defendant, Plaintiffs aver upon information and belief that the Class numbers in the hundreds, if not thousands.

51. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The questions include, but are not limited to:

a. Whether printing a receipt with the card's expiration date on it fails to comply with FACTA's truncation requirement;

b. Whether Defendant's conduct was willful within the meaning of § 1681n; and

c. Whether Plaintiffs and the members of the Class are entitled to statutory damages, punitive damages, costs and/or attorneys' fees for Defendant's unlawful conduct.

52. Plaintiffs' claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

53. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are committed to vigorously litigating this matter. Further, Plaintiffs have secured counsel experienced in handling consumer class actions. Neither Plaintiffs nor their counsel have any interests that might cause them to not vigorously pursue this claim.

54. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, with respect to individual members, which would establish incomplete standards of conduct for the parties opposing the Class, as well as a practical matter be dispositive of interests of other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

55. Defendant has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunction relief or corresponding declaratory relief with respect to the Class as a whole.

56. Whether Defendant failed to comply with the Receipt Provision as detailed by 15 U.S.C. § 1681c(g) can be easily determined by a review of Defendant's policies and ministerial inspection of Defendant's business records.

57. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small, as the maximum statutory damages are limited to $1,000 under the FCRA. Management of the Class claims is likely to present significantly fewer

difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendant's records.

**COUNT ONE – FCRA/FACTA**

**15 U.S.C. § 1681c(g)**

58. Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

59. During the Class Period, Plaintiffs and members of the Class were provided receipts by Defendant that failed to comply with the Receipt Provision.

60. The Receipt Provision, 15 U.S.C.A. § 1681c(g)(1), states as follows:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

This section applies to any "device that electronically prints receipts" (subsequently referred to in this complaint as "device" or "devices") for point of sale transactions. 15 U.S.C.A. § 1681c(g)(3).

61. Defendant employs the use of such devices at its retail locations.

62. During the Class Period, at the retail locations of Defendant, Plaintiffs and members of the Class were provided with receipts by Defendant that failed to comply with the Receipt Provision.

63. Plaintiffs are informed and believe, and on the basis of such information and belief allege, that Defendant was aware, before the Class Period began, of both the Receipt Provision as well as the need to comply with such provision.

64. On information and belief, VISA, MasterCard, and/or PCI Security Standards Counsel (a consortium founded by VISA, MasterCard, Discover, American Express, and JCB),

companies that sell cash registers and other machines or devices that process credit and debit card payments, and/or other entities, informed Defendant about FACTA, including its specific requirements concerning the truncation of credit card numbers and expiration dates on receipts provided to consumers.

65. Upon information and belief, Defendant was required by VISA, MasterCard, and/or other credit card companies to comply with the Receipt Provision.

66. Notwithstanding the significant amount of time to prepare for FACTA and its accompanying provisions, including, but not limited to, the Receipt Provision; knowledge of the Receipt Provision and FACTA as a whole; the repeated number of reminders of FACTA and its accompanying provisions; the requirements imposed by VISA, MasterCard, and other credit card companies; compliance with the Receipt Provision by Defendant in other operations; and, the compliance by the majority of Defendant's peers and competitors, Defendant knowingly, willfully, intentionally, and recklessly violated and continues to violate the FCRA and the Receipt Provision.

67. Defendant's violations of the FCRA expose Plaintiffs and members of the Class to an elevated risk of identity theft.

68. As a result of Defendant's willful violations of the FCRA and FACTA, Defendant is liable to Plaintiffs and members of the Class for statutory and punitive damages pursuant to 15 U.S.C. § 1681n.

**JURY DEMAND**

69. Plaintiffs are entitled to, and hereby demand, a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek judgment in favor of themselves and the Class for the following relief:

a. An order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the class;

b. An order declaring the acts and practices of Defendant complained of in this complaint to be in violation of FACTA and FCRA;

c. An order permanently enjoining Defendant from continuing to violate the Receipt Provision;

d. An order directing Defendant to hereafter electronically print receipts from point of sale transactions in compliance with 15 U.S.C. § 1681c(g);

e. Award statutory damages for willful violation of the FCRA in an amount between $100.00 and $1,000.00 per Class member, as determined by the Court;

f. Award punitive damages in an amount to be determined at trial;

g. Award costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n of the FCRA; and

h. Grant such other and further relief as may be necessary, just, and proper.

Dated: May 7, 2012

Respectfully submitted,

**HERMAN, HERMAN & KATZ, LLP**

By: _/s/ Soren E. Gisleson_

Russ M. Herman (La. # 6819)
Stephen J. Herman (La. # 23129)
Soren E. Gisleson (La. # 26302)
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-1892

Fax: (504) 561-6024
rherman@hhkc.com
sherman@hhkc.com
sgisleson@hhkc.com

*and*

M. Ryan Casey (La. # 31092)
**KU & MUSSMAN, P.A.**
12550 Biscayne Blvd., Suite 406
Miami, Florida 33181
Tel: (305) 891-1322
Fax: (305) 891-4512
ryan@kumussman.com

*and*

Andrew D. Bizer (La. # 30396)
**BIZER LAW FIRM, LLC**
757 St. Charles Ave., Suite 304
New Orleans, Louisiana 70130
Tel: (504) 619-9999
Fax: (504) 592-3300
andrew@bizerlaw.com

*Attorneys for Plaintiffs and the Class*