**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ROBERT TICKNOR, et al.,**                    **CIVIL ACTION**
        **Plaintiffs**
                                               **No. 12-1151**
**VERSUS**
                                               **SECTION "E"**
**ROUSES ENTERPRISES, LLC,**
        **Defendant**                          **This document applies to 12-1151**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

Plaintiffs, by and through undersigned counsel, hereby file this memorandum in support

of Plaintiffs' Motion for Class Certification, filed concurrently herewith.  For all of the reasons

provided in the memorandum, Plaintiffs' Motion for Class Certification should be granted.

## TABLE OF CONTENTS

I.  SUMMARY OF ARGUMENT ................................................................................1

II.  BACKGROUND AND FACTS ...........................................................................1

    A.  The Fair and Accurate Credit Transactions Act of 2003 .............................1

    B.  Rouses' Reckless Disregard for FACTA and Uniform Conduct Toward the Class ....3

    C.  Named Plaintiffs ........................................................................................11

III.  LAW AND ARGUMENT ...................................................................................11

    A.  Class Definition.........................................................................................11

    B.  Courts Routinely Certify Classes Regarding FACTA Violations ............................12

    C.  The Proposed Class Meets the Requirements of Rule 23(a).....................13

        1.  The proposed class is so numerous that joinder is impracticable ...............13

        2.  There are questions of law and fact common to the Class..........................14

        3.  The Plaintiffs' claims are typical of the claims of the Class......................15

        4.  Plaintiffs will fairly and adequately protect the interests of the Class........16

    D.  The Proposed Class Meets the Requirements of Rule 23(b)(3)................17

        1.  Questions of law and fact common to Class members predominate over any questions affecting only individual members ..............................17

        2.  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.........................................20

        3.  Membership in the class can be confirmed through Defendant's business records........................................................22

    E.  The Proposed Class Is Ascertainable / Objectively Defined.....................24

    F.  Notice Can Be Achieved Through Publication .........................................24

IV.  Conclusion ........................................................................................................25

## <u>TABLE OF CASES</u>

### *<u>Case Law</u>*

Amchem Prods. v. Windsor,
    521 U.S. 591 (1997).........................................................................................................17

Armes v. Shanta Enterprise, Inc. ("Armes I),
    No. 07-5766, 2009 WL 2020781 (N.D. Ill. Jul. 8, 2009) ................................................12, 15

Armes v. Sogro, Inc. ("Armes II"),
    No. 08-244, 2011 WL 1197537 (E.D. Wis. Mar. 29, 2011) ......................................12, 18, 19

Bateman v. American Multi-Cinema, Inc.,
    623 F.3d 708 (9th Cir. 2010) ...........................................................................................3, 13

Berger v. Compaq Computer Corp.,
    257 F.3d 475 (5th Cir. 2001) .................................................................................................16

Beringer v. Standard Parking Corp.,
    No. 07-5027, 2008 WL 4390626 (N.D. Ill. Sep. 24, 2008) .................................13, 18, 19, 23

Bush v. Calloway Consolidated Group River City, Inc.,
    No. 10-841, 2012 WL 1016871 (M.D. Fla. Mar. 26, 2012) ................................12, 13, 20, 23

Carnegie v. Household Intern, Inc.,
    376 F.3d 656 7th Cir. 2004)...................................................................................................21

DeBremaecker v. Short,
    433 F.2d 733 (5th Cir. 1970) .................................................................................................24

Engel v. Scully & Scully, Inc.,
    279 F.R.D. 117 (S.D.N.Y. 2011) .....................................................................................12, 14

Halperin v. Interpark, Inc.,
    No. 07-2161, 2007 WL 4219419 (N.D. Ill. Nov. 29, 2007) ...................................................13

Hanlon v. Palace Entertainment Holdings, LLC,
    No. 11-987, 2012 WL 27461 (W.D. Pa. Jan. 3, 2012) ..........................................................12

In re Combustion,
    103 F.3d 124 (5th Cir. 1996) .................................................................................................25

In re HP Inkjet Printer Litig.,
    No. 05-3580, 2011 WL 1158635 (N.D. Cal. Mar. 29, 2011) .................................................21

In re MTBE Prods. Liab. Litig.,
     241 F.R.D. 185 (S.D.N.Y. 2007) ..................................................................22

In re Nissan Motor Corp. Antitrust Litigation,
     552 F.2d 1088 (5th Cir. 1977) ....................................................................25

Jenkins v. Raymark Industries, Inc.,
     782 F.2d 468 (5th Cir. 1986) ..................................................................16, 17

John v. Ntl. Sec. Fire & Cas. Co.,
     501 F.3d 443 (5th Cir. 2007) .......................................................................24

Keller v. Macon County Greyhound Park,
     No. 07-1098, 2011 WL 1085976 (M.D. Ala. Mar. 24, 2011)..............13, 18, 19, 21

Lightbourn v. County of El Paso,
     118 F.3d 421 (5th Cir. 1997) ...................................................................14, 15

Marquita Sanders v. W & W Wholesale, Inc.,
     No. 11-3557, 2012 WL 3987629 (N.D. Ill. Sep. 11. 2012) ..............................13

Matthews v. United Retail,
     248 F.R.D 210 (N.D. Ill. 2008)...............................................................12, 19

Meehan v. Buffalo Wild Wings, Inc.,
     249 F.R.D. 284 (N.D. Ill. 2008)...................................................................13

Miller-Huggins v. Mario's Butcher Shop, Inc.,
     No. 09-3774, 2010 WL 658863 (N.D. Ill. Feb. 22, 2010) ..............................12

Mullen v. Treasure Chest Casino,
     186 F.3d 620 (5th Cir. 1999) ...............................................................13, 17, 18

Ratner v. Chemical Bank New York Trust Co.,
     54 F.R.D. 412 (S.D.N.Y. 1972) .....................................................................3

Redmond v. Uncle Julio's of Ill., Inc.,
     249 F.R.D. 290 (N.D. Ill. 2008).................................................................13, 15

Rogers v. Khatra Petro, Inc.,
     No. 08-294, 2010 WL 3894100 (N.D. Ind. Sep. 29, 2010) .................13, 14, 18, 21

Safeco Ins. Co. of Am. V. Burr,
     551 U.S. 47 (2007)........................................................................................2

iv

Sander v. W&W Wholesale Inc.,
   No. 11-3557, 2011 WL 4840978 (N.D. Ill. Oct. 12, 2011) ....................................................7

Shurland v. Bacci Café & Pizzeria on Ogden, Inc.,
   259 F.R.D. 151 (N.D. Ill. 2009)................................................................................13, 18

Shurland v. Bacci Café & Pizzeria on Ogden, Inc.,
   271 F.R.D. 139, 147 (N.D. Ill. 2010)..................................................................................23

Stillmock v. Weis Markets, Inc.,
   385 Fed.Appx. 267 (4th Cir. 2010)...........................................................................13, 21, 22

Sullivan v. DB Investments, Inc.,
   667 F.3d 273 (3d Cir. 2011)..................................................................................................21

Tchoboian v. Parking Concepts, Inc.,
   No. 09-422, 2009 WL 2169883 (C.D. Cal. Jul. 16, 2009).....................13, 14, 15, 16, 18, 21

Troy v. Red Lantern Inn, Inc.,
   No. 07-2418, 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007)....................................................13

Union Asset Mgmt. Holding A.G. v. Dell, Inc.,
   669 F.3d 632 (5th Cir. 2012) ...............................................................................................24

Villagran v. Central Ford, Inc.,
   524 F.Supp.2d 866 (S.D. Tex. 2007) ...................................................................................25

## *Statutes and Regulations*

15 U.S.C. § 1681 ..................................................................................................... *passim*

Fed. R. Civ. P. 23 .................................................................................................... *passim*

Pub. L. No. 110-241, 122 Stat. 1565 ........................................................................................3

Pub. No. 108-159, 117 Stat. 1952 (2003) ...........................................................................1-2

## I.     SUMMARY OF ARGUMENT

Plaintiffs easily meet the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23(a) as well as the predominance and superiority requirements of Rule 23(b)(3).  Class actions brought in response to violations of the Fair and Accurate Credit Transaction Act, 15 U.S.C. § 1681 et seq. ("FACTA"), such as this one, are routinely certified, and certification in this matter should likewise be granted.

In a case such as this, there are three overarching issues.  First, with respect to liability, did the receipts violate FACTA?  Second, with respect to liability, was Defendant's conduct willful or reckless?  And third, what amount of damages should be awarded to Class Members?

Answering these questions with respect to the Named Plaintiffs similarly answers them with respect to the Class Members.  Defendant's own expert admits that all the receipts printed at the stores identified in the Class Definition during the Class Period violated FACTA.  The actions and documents which relate to "willfulness" all originated from Rouses' corporate headquarters, and thus apply equally to all Class Members, as does the knowledge of Rouses' corporate officers, who even themselves received 30 non-compliant receipts during the Class Period.  Finally, because this case does not involve *actual* damages but rather *statutory* damages, damages are calculable on a classwide basis.  Since the three key issues in every FACTA case can all be resolved through classwide proof here, class certification is not only appropriate but necessary to achieve judicial efficiency.

## II.     BACKGROUND AND FACTS

### A.     The Fair And Accurate Credit Transactions Act of 2003

The Fair and Accurate Credit Transactions Act, Pub. No. 108-159, 117 Stat. 1952 (2003)[1]

---

[1] FACTA amended portions of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").  Specifically, FACTA added the following provisions to FCRA: 15 U.S.C. §§ 1681c-1, 1681c-2, 1681x, 1681s-3, and 1681w.

("FACTA") was enacted on December 3, 2003.  Among other things, the law set requirements for how credit card receipts were to be truncated by merchants.  According to the law:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g) ("Receipt Provision").

FACTA was passed, among other objectives, "to prevent identity theft."  Preamble, Pub. L. No. 108-159.  As noted in the House Report:

> The crime of identity theft–in which a perpetrator assumes the identity of a victim in order to obtain financial products and services or other benefits in the victim's name–has reached almost epidemic proportions in recent years.

H.R. Rep. No. 108-263, at 25 (2003).

The FCRA provides that any "person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to: 1) statutory damages of not less than $100 and not more than $1,000; 2) punitive damages; and, 3) attorney fees and costs."  15 U.S.C. § 1681n(a).  The Supreme Court construed "willfully" in §1681n(a) as including both "knowing" and "reckless" violations of FACTA.  Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 56-57 (2007).  Recklessness entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known."  Id. at 68.  Further, recklessness need not entail an objective "risk of harm" to the plaintiff, but only a "reckless disregard of a statutory duty[.]"  Id. at 57.

Though enacted in 2003, FACTA (including the Receipt Provision), provided that cash registers in use before 2005 had until December 2006 to comply, while registers first used after January 1, 2005 had to comply immediately.  15 U.S.C. § 1681c(g)(3).  Soon thereafter, FACTA

2

class actions were filed across the nation. In response, Congress passed the Clarification Act of 2007, expanding the window for merchants to comply with the expiration date portion of the Receipt Provision. See Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, 122 Stat. 1565 ("Clarification Act"). Under the law, the printing of expiration dates between December 4, 2004 and May 20, 2008 would not amount to a willful FACTA violation. By creating amnesty without further limiting class actions, Congress essentially endorsed the role class actions would play in FACTA's enforcement, as noted by the Ninth Circuit:

> In the midst of [the judicial disagreement as to whether FACTA cases should be certified], Congress stepped in to amend FACTA [with the Clarification Act], and yet did nothing to limit the availability of class relief or the amount of aggregate damages. Had Congress been sufficiently concerned about disproportionate damages as a result of class actions, it would have limited class availability or aggregate damages. Yet Congress did nothing of the sort and instead merely imposed a retroactive immunity for a subclass of merchants who misunderstood FACTA's requirements.
>
> Where Congress in the past has been confronted with concerns over disproportionate, potentially enormous statutory damage awards, it has acted decisively to make its intent clear. Responding to the problem identified in Ratner, Congress amended TILA's civil liability provision in 1974 [so that class action statutory damages cannot exceed $500,000 or 1% of the defendant's net worth, whichever is less].

Bateman v. American Multi-Cinema, Inc., 623 F.3d 708, 720 (9th Cir. 2010) (citing Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412 (S.D.N.Y. 1972)).

Needless to say, the amnesty window has closed, and Rouses failed to comply with the law for nearly eight years after its enactment, and four years since the end of the amnesty period.

**B.     Rouses' reckless disregard for FACTA and uniform conduct toward the Class**

Though merits discovery is ongoing, the facts thus far reveal a reckless disregard for FACTA and its requirements by Defendant. As noted below: (1) Rouses had years to comply

with FACTA, but did not; (2) Rouses was party to numerous contracts requiring it to truncate the expiration dates; (3) Rouses received notice from numerous parties (including credit card companies, transaction processors, and its data security analyst) of the need to truncate the expiration dates; (4) Rouses received notice of FACTA from trade publications; (5) a corporate employee for VISA or MasterCard complained to Rouses about its failure to truncate the expiration dates; and (6) Rouses' corporate officers, when doing personal shopping, received dozens of non-compliant receipts for years after they were aware of FACTA's requirements.

Though FACTA was passed in 2003, Rouses had until January 2005 to bring its stores into compliance, yet did not.  This failure continued *for years*, despite the fact that Defendant received notice countless times from various sources.

For one, Rouses reviewed and signed various contracts requiring FACTA compliance. VISA's 2005 *Rules for Visa Merchants* could not have been any clearer:

> Visa requires that all new electronic POS terminals provide account number truncation on transaction receipts.  This means that only the last four digits of an account number should be printed on the customer's copy of the receipt, and the expiration date should not appear at all.  Existing POS terminals must comply with these requirements by July 1, 2006.

Def. Bates Documents, attached hereto as Ex. 1 at 382, 406.  If that was not enough, VISA even provided an example of a compliant receipt (id. at 447) with an arrow pointing toward a truncated expiration date with the words "the expiration date should not appear at all."

In addition to credit card companies, Rouses received notice of the Receipt Provision time and time again from various transaction processors.  In November 2007, Rouses signed a "Customer Processing Agreement" with RBS.   In a section entitled "Additional Customer Responsibilities," the contract provided that "cardholder receipts must also disguise or suppress the expiration date of the Transaction Card as required by the Rules."  Id. at 662, 666, 667.

4

Additionally, Rouses "agree[d] to abide by the Rules of the Card Associations and to comply with all federal and state laws, rules and regulations." Id. at 662. The signatory on behalf of Rouses, Tommy Rouse, who along with his brother Donald are described on Rouses' website as being "at the helm" of the company,[2] admits that he read this as well as the other contracts he signed. Jun. 19, 2013 30(b)(6) Dep. ("Corp. Dep. I"), attached hereto as Ex. 2, at 77:18 – 78:1; Oct 30, 2013 30(b)(6) Dep. of Def. ("Corp. Dep. II"), attached hereto as Ex. 3, at 41:21 – 43:3. Further, in 2010, the payment processor WorldPay sent Tommy Rouse and Allison Rouse (another corporate employee) information pertaining to "VISA's Best Practices" for the internal storage of cardholder data, which clearly noted that the Best Practices do "not supersede stricter laws or regulations in place for displays of cardholder data." Ex. 1 at 10882, 10883, 10943. In 2011, Rouses entered into a contract with WorldPay, and Tommy Rouse again bound the company to a contract wherein Rouses agreed to "disguise or suppress the expiration date of the Transaction Card as required by the Rules." Id. at 689, 693-94, 697.[3]

Further, Rouses is subject to the Payment Card Industry Data Security Standard ("PCI-DSS"), a security standard for merchants storing cardholder data. Indeed, due to its size, Rouses is a "tier one merchant for PCI security." Corp. Dep. I at 51:5-6. Between 2008 and 2012, Rouses' PCI compliance vendor (Security Metrics) sent numerous documents to Rouses warning it that compliance with PCI-DSS did not entail compliance with FACTA; namely, that the PCI-DSS requirement to mask a portion of card numbers maintained on Rouses' servers "does not supersede stricter requirements in place for displays of cardholder data—for example, for point-of-sale (POS) receipts." See, e.g., *Navigating PCI-DSS* (2008), Ex. 1 at 13419, 13437; *PCI-DSS*

---

[2] Rouses Website, "History", avail. at http://shop.rouses.com/rouses_history.aspx.

[3] Rouses no longer has in its possession, custody, or control a number of other contracts to which it was a party, including contracts with Bank of America (in 2005, 2006, and 2007), RBS (2008 and 2009), Midax, Hibernia Bank, and Capital One Bank, all of which presumably had similar language. Further discovery relating to these contractual relationships (and underlying contracts) is anticipated.

*Requirements and Security Assessment Procedures* (2009), id. at 2676, 2699; *Navigating PCI-*

*DSS* (2010), id. at 2449, 2454, 2470; *PCI-DSS Quick Reference Guide* (2010), id. at 2510, 2523;

*PCI-DSS Requirements and Security Assessment Procedures* (2010), id. at 2750, 2779; *PCI-DSS*

*Self Assessment Questionnaire* (2010), id. at 12146, 12165; *Report on Rouses PCI Compliance*

(2011), id. at 17697, 17727-28; *ROC Reporting Instructions for PCI-DSS* (2011), id. at 2544,

2584; *Report on Rouses PCI Compliance* (2012), id. at 541, 584-585.  The PCI-DSS standards

repeatedly emphasized that a merchant's duty regarding cardholder data does not end and begin

with PCI compliance:

> PCI DSS represents a minimum set of control objectives which
> may be enhanced by local, regional and sector laws and
> regulations.  Additionally, legislation or regulatory requirements
> may require specific protection of personally identifiable
> information or other data elements…Examples include legislation
> related to consumer data protection, privacy, identify theft, or data
> security.  PCI DSS does not supersede local or regional laws,
> government regulations or other legal requirements.

*Navigating PCI-DSS*, id. at 2454.  Rouses' contract employees (and Rouses itself who certified

compliance) reviewed these documents.  Corp. Dep. II at 42:19 – 43:3, 68:5-8.

Rouses received notice of FACTA from trade publications as well.  In February 2008,

Donald Rouse received an e-newsletter from *Supermarket News* with the following story:

> **Courts Still Mulling Class-Action Status of Credit Transaction Suits**
> As many as 300 class-action lawsuits involving alleged retail violations
> of the Fair and Accurate Credit Transaction Act of 2003 are still
> awaiting legal ruling on their class-action status, among other issues,
> according to John McIntyre, partner at Reed Smith, a law firm that
> represents about 15 of the retail companies named in the suits.
> [*Hyperlink provided to full story*]

Ex. 1 at 2899-2900.  The hyperlinked story went on to explain that "[m]ost of the cases – some

of which involve food retailers – have focused on the printing of expiration dates."[4]

Given the publicity, prodding from VISA and MasterCard, contractual obligations, and notices from industry partners, Rouses' competitors overwhelmingly complied with FACTA at the time this suit was filed.  As noted in the article sent to Donald Rouse, by February 2008 "[m]ost of the big supermarket chains ha[d] made the [expiration date truncation] change but some smaller retailers may not know of the law and may still be printing expiration dates[.]"  Id.

If the passage of the Clarification Act,[5] a plethora of contractual obligations, repeated notices from credit card companies and transaction processors, warnings from its PCI-DSS compliance company, industry publication articles, and the compliance of its competitors weren't enough notice, Rouses in March 2007 received a gift in the form of a customer complaint.  While shopping at Store No. 10 in Morgan City, an individual employed by a major credit card company noticed something was wrong with her receipt.  As explained by Rouses' corporate representative and owner, Tommy Rouse:

> The customer walked into the store and happened to be -- according to my memory and to what I recall was -- said that she was a -- worked for Visa or MasterCard, and that we should not be printing expiration dates on the receipt.  And that got basically all the way up to my desk.

Corp. Dep. II at 22:23 – 23:3.  The store manager called headquarters, where Rouses' office manager, Penny Thibodeaux, took the call and immediately notified Tommy Rouse, who in turn asked Ms. Thibodeaux to contact BA Merchant Services, Rouses' payment processor, to verify the requirement.  Sep. 4, 2013 Thibodeaux Dep., attached hereto as Ex. 4, at 43:12 – 44:9.  BA Merchant Services verbally confirmed the truncation requirement, and even followed up with a

---

[4] SUPERMARKET NEWS, *Courts Still Mulling Class-Action Status of Credit Transaction Suits*, at http://supermarketnews.com/supplier-news/courts-still-mulling-class-action-status-credit-transaction-suits.

[5] As noted by many courts, the Clarification Act actually makes it *harder* for defendants to resist allegations of post-May 2008 willful noncompliance.  See, e.g., Sander v. W&W Wholesale Inc., No. 11-3557, 2011 WL 4840978 at *2 (N.D. Ill. Oct. 12, 2011).

fax to Rouses showing a sample compliant receipt (Ex. 1 at 655):



Compliance was simple, as "[a]ll Rouses stores use identical hardware and software for the printing of receipts[.]"  Def. Resp. to Pl.'s Interrog., attached hereto as Ex. 5, at No. 20. Moreover, Rouses controlled the settings for their point-of-sales software at their headquarters. Corp. Dep. I at 42:16 – 44:8; see also Corp. Dep. II at 24:20 – 25:20.  Prodded by a customer complaint and at the urging of their payment processor, employees at Rouses headquarters on March 27, 2007 changed the "show expiration date" settings at each store from "Y" to "N".  Id. As noted below, every store Rouses acquired or opened thereafter, however, failed to comply.

Thus it cannot be disputed that Rouses had an intimate working knowledge of FACTA's

requirements from March 2007 to the present (and throughout the entire Class Period).  During

that time, Rouses continued to grow as a company, opening new stores and acquiring others in

Louisiana and Mississippi, ultimately evolving into the <span style="color:red">REDACTED</span> ████████████████

███████████████████████████████.  Rouses Financial Statements, Ex. 1 at 17874,

17878, 17881.  Unfortunately, its zeal for expansion did not extend to regulatory compliance,

and Rouses made no effort to comply with FACTA at its newly opened or acquired locations.

Disregarding FACTA, it goes without saying that Rouses did not monitor for compliance with it,

even though it was a party to various contracts with credit card companies and payment

processes requiring monitoring.  Corp. Dep. II at 75:20-25; see also MasterCard Rules, Ex. 1 at

119, 154, 172 ("[e]ach Member must…conduct meaningful and ongoing monitoring to ensure

compliance with all of the responsibilities set forth in this Rule").

 As a result, until May of 2012 (when suit was filed), Rouses uniformly violated

FACTA's Receipt Provision at 22 of its 38 locations.  Ex. 5 at pp. 15-16.  At Store Nos. 24-41

and 44-47 (hereafter, "Non-Compliant Stores"), Defendant violated FACTA a staggering *14

million* times between May 8, 2010 and May 10, 2012 ("Class Period").  Id.; Corp. Dep. II at

50:18 – 51:7.  Defendant's own expert admits that FACTA was uniformly violated during the

Class Period at the locations in the Class Definition.  Lisker Dep., attached hereto as Ex. 6, at

57:21 – 58:3.  Further, for these 14+ million credit / debit card transactions, Rouses estimates

that it provided receipts to nearly all (if not all) of the customers.  Corp. Dep. II at 51:8-10.

Defendant has uniform training for its cashiers at all its stores, and the cashiers are trained to

hand receipts to customers.  Id. at 63:15-19, 65:11-14.  Indeed, <span style="color:red">REDACTED</span> ██████████

██████████████████████████████████████████████

██████████████████████████████████████████████ Ex.

1 at 13671, 13705.[6]

Compliance and monitoring aside, Rouses' corporate officers chose not to act even after they *personally* received non-compliant receipts after their own grocery shopping. Between August 2010 and April 2012, corporate credit card statements reveal that Tommy Rouse, Donald Rouse Sr., Donald Rouse Jr., Allison Rouse, and Bob Bixenman (Director of Construction) received approximately thirty (30) non-compliant receipts at six different stores in New Orleans and Lafayette.[7] Two cities, five corporate officers, six stores, and thirty FACTA violations *literally* right under their noses, and still, Rouses failed to act.

After receiving notice countless times, and having six years to comply with the Receipt Provision, Defendant instead violated it *14 million times* at 22 different store locations. Even when corporate officers' personal shopping receipts showed FACTA violations, Rouses did nothing. Rouses' reckless disregard of their statutory duty is explained by Defendant's own expert, who defended Rouses' apathy amidst irrefutable evidence of lawbreaking:

> [W]hether there was any emergency or any critical result that could have come from those digits -- from the expiry date being placed on the sales draft, it's – ***it's really not a bell-ringing kind of event. Nobody would have paid much attention to it.*** I think they -- most people would have deemed that a procedural issue that they just need to address at some point; if, in fact, they believe that they had to address it or it was -- it was wide-ranging or maybe it was only a few stores. I mean, I don't know. People react differently to this kind of information, but I -- ***I can't imagine any alarm bells would have gone off***.

Lisker Dep. at 73:7-23. To Mr. Lisker, Defendant's disinterest made perfect sense, as he shared Rouses' apparent opinion that the expiration date is just "essentially worthless information [that] wouldn't make any difference anyway, albeit a technical violation of FACTA." Id. at 75:22 –

---

[6] See also Cutler Dep., attached hereto as Exhibit 7, at 32:13-25 (class representative assumes he gets receipt every time and how Rouses' cashiers "usually just put it in the bad, or hand it to you right after you check out"; see also Lisker Dep. at 64:11-23 (typical for grocery stores to automatically provide customers with receipts).

[7] Rouses Corporate Card Statements, Ex. 1 at 17971, 17974, 18007, 18028, 18048, 18056, 18061, 18067, 18078, 18087, 18102, 18113, 18114, 18120, 18124, 18126, 18134, 18135, 18139, 18172, 18173, 18184, 18185.

76:1. 14 million 'alarm bells' later, Plaintiffs seek to certify a class of similarly situated consumers to redress Rouses' willful and reckless violations of federal law.

### C.    Named Plaintiffs

The core facts relating to the named plaintiffs are substantively identical in this case, as they are for all the members of the putative class.  On April 26, 2012, Plaintiff Robert Ticknor purchased items with his personal MasterCard at the Rouses store located at 400 North Carrolton Avenue, New Orleans, Louisiana 70119.  On May 3, 2012, Plaintiff Matthew Russell purchased items with his personal VISA card at the Rouses store located at 701 Royal Street, New Orleans, Louisiana 70116.  And on May 6, 2012, Plaintiff Daniel Cutler purchased items with his personal American Express at the Rouses store located at 701 Baronne Street, New Orleans, Louisiana 70113.  At the point of sale, all three class representatives received printed receipts which revealed the expiration dates of their credit cards.  Ticknor Dep., attached hereto as Ex. 8, at 48:4-11; Russell Dep., attached hereto as Ex. 9, at 39:25 – 40:8, 40:20-22; Cutler Dep. at 24:2-21; see also Plaintiffs' Receipts, attached here as Ex. 10.

The class representatives are not "serial FACTA litigants" that have emerged in some judicial district.  This is their first and only lawsuit relating to FACTA; indeed, it is the first lawsuit they have *ever* been a party to.  Ticknor Dep. at 17:24 – 18:3; Russell Dep. at 13:13-17; Cutler Dep. at 43:8-12.

### III.   LAW AND ARGUMENT

### A.    Class Definition

Plaintiffs seek an order certifying the following Class:

> All persons who made in-store purchases from the Defendant using a debit or credit card, in a transaction occurring from May 8, 2010, through May 10, 2012, at one of the following Rouses stores: Nos.

24-41 and 44-47 ("Non-Compliant Stores").[8]

Specifically excluded from the Class are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all commercial entities; (d) all persons who have previously executed and delivered to Defendant releases for all of their Class claims; and (e) Defendant's employees, officers, directors, agents, and representatives as well as their family members.

### B.   Courts Routinely Certify Classes Regarding FACTA Violations

Courts nationwide have repeatedly held that class actions brought in response to violations of FACTA's Receipt Provision satisfy the prerequisites for certification under Rule 23(a) and 23(b)(3), noting that such cases are in fact models for Rule 23.  See, e.g., Engel v. Scully & Scully, Inc., 279 F.R.D. 117, 130 (S.D.N.Y. 2011) ("the class action is a superior method for resolving [FACTA cases]"); Armes v. Shanta Enterprise, Inc., No. 07-5766, 2009 WL 2020781 at *2 (N.D. Ill. Jul. 8, 2009) ("Armes I") (noting in FACTA cases, "several judges…have certified classes similar to the one plaintiff proposes here"); Armes v. Sogro, Inc., No. 08-244, 2011 WL 1197537 at *6 (E.D. Wis. Mar. 29, 2011) ("Armes II") ("FACTA claims are especially well-suited to resolution in a class action"); Matthews v. United Retail, 248 F.R.D. 210, 216 (N.D. Ill. 2008) (same); Hanlon v. Palace Entertainment Holdings, LLC, No. 11-987, 2012 WL 27461 at *2 (W.D. Pa. Jan. 3, 2012) ("cases brought to remedy FACTA violations [are] particularly amenable to class certification"); Miller-Huggins v. Mario's Butcher Shop, Inc., No. 09-3774, 2010 WL 658863 at *5 (N.D. Ill. Feb. 22, 2010) (FACTA Receipt Provision case "is well-suited for class certification"); Bush v. Calloway Consol. Group River City, Inc., No. 10-841, 2012 WL 1016871 at *11 (M.D. Fla. Mar. 26, 2012) ("[c]ourts routinely find class

---

[8] The exact addresses of these stores are provided at Ex. 5 at pp. 15-16.  When providing notice, Plaintiff will provide the store addresses so that persons can self-identify as Class Members.

resolution superior in consumer protection actions, including those brought pursuant to FACTA").[9]

## C.    The Proposed Class Meets The Requirements Of Rule 23(a)

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure.  Rule 23(a) sets forth four threshold elements which must be satisfied before an action can be certified as a class action.  These elements are: (1) Numerosity: the class is so numerous that joinder of all members is impracticable; (2) Commonality: there are questions of law or fact common to the class; (3) Typicality: the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) Adequacy: the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  These elements are easily satisfied here.

### 1.    The proposed class is so numerous that joinder is impracticable

The Fifth Circuit has found that classes in excess of 100 members satisfy numerosity. Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 624 (5th Cir. 1999).  In ascertaining class size in a FACTA context, the Court "may rely on common sense assumptions or reasonable inferences" based on the number of non-compliant receipts.  Bush at *6 (finding numerosity due to 72,000 non-compliant transactions).  Here, Defendant has identified over 14 million particular transactions generating non-complaint receipts at Non-Compliant Stores during the Class Period.

---

[9] In jurisdictions across the nation, courts regularly certify classes (where, like here, certification is contested) in FACTA Receipt Provision violation cases.  In addition to the cases cited elsewhere in this Memorandum, see, e.g., Bateman v. American Multi-Cinema, Inc., 623 F.3d 708 (9th Cir. 2010) (reversed district court's denial of certification); Stillmock v. Weis Markets, Inc., 385 Fed.Appx. 267 (4th Cir. Jul. 1, 2010) (reversed district court's denial of certification); Keller v. Macon Cnty. Greyhound Park, Inc., No. 07-1098, 2011 WL 1085976 (M.D. Ala. Mar. 24, 2011); Meehan v. Buffalo Wild Wings, Inc., 249 F.R.D. 284 (N.D. Ill. 2008); Redmond v. Uncle Julio's of Ill., Inc., 249 F.R.D. 290 (N.D. Ill. 2008); Rogers v. Khatra Petro, Inc., No. 08-294, 2010 WL 3894100 (N.D. Ind. Sep. 29, 2010), Beringer v. Standard Parking Corp., No. 07-5027, 2008 WL 4390626 (N.D. Ill. Sep. 24, 2008); Halperin v. Interpark, Inc., No. 07-2161, 2007 WL 4219419 (N.D. Ill. Nov.29, 2007); Tchoboian v. Parking Concepts, Inc., No. 09-422, 2009 WL 2169883 (C.D. Cal. Jul. 16, 2009); Shurland v. Bacci Café & Pizzeria on Ogden, Inc., 259 F.R.D. 151 (N.D. Ill. 2009); Marquita Sanders v. W & W Wholesale Inc., No. 11-3557, 2012 WL 3987629 (N.D. Ill. Sep. 11, 2012); Troy v. Red Lantern Inn, Inc., No. 07-2418, 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007).

Corp. Dep. II at 50:18 – 51:10.  Accordingly, numerosity has been satisfied.

**2.    There are questions of law and fact common to the class**

The test for commonality is not demanding and is met "where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." Lightbourn v. County of El Paso, 118 F.3d 421, 426 (5th Cir. 1997).  In the FACTA context, courts "have routinely found that FACTA cases meet the commonality requirement."  Rogers at *4; see also Engel, 279 F.R.D. at 128 (same).  The overriding factual and legal issues in FACTA cases such as this one are whether "each member of the proposed class allegedly received a non-compliant receipt from [Defendant] after the FACTA compliance deadline" and whether "[defendant's] alleged non-compliance was willful so that the class members are entitled to statutory damages" Tchoboian at *5.  FACTA commonality is most easily established where "the claims arise from Defendant's standardized conduct[.]"  Rogers at *4.  Further, courts certifying FACTA cases recognize that "[a]lthough there may be some difficulty in determining who received a noncompliant receipt, [there is nevertheless] a common core of salient facts and legal issues."  Id.

The facts here (see Section II(B), *supra*) easily establish commonality.  First, all of the receipts printed at the Non-Compliant stores during the Class Period revealed the expiration date.  Further, the point-of-sales systems were all controlled centrally at Rouses' corporate headquarters.  Because the receipts for the Class Members were identical, the question of whether FACTA was violated is common to the Class.

Second, the "knowledge" that Rouses was breaking FACTA in March 2007 made its way "up to [the] desk" of Tommy Rouse.  The decision to ignore future signs of non-compliance and forego any sort of monitoring were those made by Rouses' corporate employees, and applied

equally to all the stores in which the Class Members made purchases.  Thus the question of willfulness is also common to the Class.  Accordingly, Rule 23(a)(2) has been satisfied.

### 3.       The Plaintiffs' claims are typical of the claims of the Class

"The test for typicality, like the test for commonality, is not demanding [and] focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent."  Lightbourn, 118 F.3d at 426.  Like commonality, a FACTA "plaintiff's claim is also typical because it presents factual and legal issues that are common to all class members, such as whether defendant routinely provided receipts that contained customers' complete credit or debit card numbers and expiration dates, and whether that conduct was a willful violation of the FACTA."  Armes I at *3.  As noted by one court, typicality is easily satisfied in FACTA cases:

> The alleged facts of this case indicate that the typicality requirement
> is met.  [The plaintiff's] claim arose from the same alleged conduct
> as other class members: they all received a credit or debit card
> receipt from [the defendant] which contained either the expiration
> date and/or more than the last five digits of recipients card number.
> Further, all claims against Uncle Julio's involve the same legal
> theory, a violation of FACTA, 15 U.S.C. § 1681(c)(g)(1).

Redmond, 249 F.R.D. at 294-95; see also Tchoboian at *6 (class representative's claim that defendant "issued him a non-compliant receipt in willful violation of FACTA" is "substantially identical to the claims of the proposed class members").

As noted in the facts (Section II(B)-(C), *supra*), all three class representatives went to a Rouses store, paid with a personal credit or debit card, and received the customer copy of the receipt which contained the expiration date of their credit or debit card.  This is the typical scenario for all Class Members.  Further, cashier training is consistent across Rouses stores, and they are trained that the "customer should always get the original receipt[.]"  All three class

members allege that Rouses issued them a non-compliant receipt in willful violation of FACTA, which is substantially identical to the claims of the proposed class members.   Accordingly, Plaintiffs have satisfied Rule 23(a)'s typicality requirement.

### 4.      Plaintiffs will fairly and adequately protect the interests of the Class

#### (a)      Class representatives

Rule 23(a)(4) requires that the named class representatives fairly and adequately protect the interests of the class.   The district court should evaluate whether the class representatives has a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members.   Mullen, 186 F.3d at 626 (citing Jenkins v. Raymark Industries, Inc., 782 F.2d 468, 472 (5th Cir. 1986).   Additionally, the district court may inquire into the zeal and competence of the class representatives, and their willingness to take an active role in the litigation and to protect the interests of absentees.   Berger v. Compaq Computer Corp., 257 F.3d 475, 479 (5th Cir. 2001).   In the FACTA context, courts typically investigate to ensure that the class representatives do not  "demonstrate disinterest in the case and cede control to counsel entirely."  Tchoboian at *6.

Here, the class representatives are neither disinterested in the case nor cede control to counsel entirely.   The class representatives, when questioned by defense counsel: (1) knew that the case regarded violations of FACTA's Receipt Provision as to the expiration dates, (2) knew the identity (and to some extent the qualifications) of their attorneys, (3) knew the stage of litigation to which the case had proceeded, (4) knew the Class of persons they were seeking to represent, (5) knew they were seeking statutory (as opposed to actual) damages, (6) understood their role as class representatives, and (7) understand their role in looking out for the best interests of the class.  Ticknor Dep. at pp. 20-21, 28, 33, 35, 61; Russell Dep. at pp. 14, 15, 26,

28, 32, 52; Cutler Dep. at pp. 12-13, 34.  Further, as noted previously (Section II(C), *supra*), the named representatives are not 'serial FACTA litigants' that have emerged in some judicial districts; indeed, they have never been a party to a lawsuit before.  For these reasons, the class representatives are adequate representatives of the Class.[10]

### (b)     Class counsel

Additionally, Plaintiffs have selected and retained competent Class Counsel.  As reflected in each firm's resume, attached hereto as Exs. 11-13, Class Counsel possess extensive experience prosecuting class actions.  Steve Herman and Soren Gisleson (Herman Herman & Katz) and Ryan Casey and Brian Ku (Ku & Mussman) have served in leadership roles and been appointed as Class Counsel in various class actions throughout the nation.  Andrew Bizer (Bizer Law Firm) also has experience working on complex cases and class actions.  Undoubtedly, Class Counsel are qualified to represent the Class and will, along with Plaintiffs, vigorously protect the interests of the Class and maximize the recovery for all Class Members.

### D.     <u>The Proposed Class Meets The Requirements Of Rule 23(b)(3)</u>

Certification is appropriate under Rule 23(b)(3) when common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication.  <u>Amchem Prods. v. Windsor</u>, 521 U.S. 591, 591-94 (1997).  These requirements are satisfied in this case.

### 1.     <u>Questions of law and fact common to Class members predominate over any questions affecting only individual members</u>

"'In order to 'predominate,' common issues must constitute a significant part of the individual cases.'"  <u>Mullen</u>, 186 F.3d at 626 (quoting <u>Jenkins</u>, 782 F.2d at 472).  Predominance is

---

[10] It should also be noted that the class representatives are well-educated.  Robert Ticknor has a Master's Degree in History from Tulane; Matthew Russell received his B.A. from Tulane in three majors (English, History, and Philosophy), and Daniel Cutler graduated from the prestigious Berklee College of Music in Boston.  Ticknor Dep. at 15:10-17; Russell Dep. at 8:2-9; Cutler Dep. at 9:13-16..

most often found where "[t]he common issues in [the] case…are not only significant but pivotal." Id.

First, in the FACTA context, predominance is most easily met where "[t]he conduct at issue here-namely, the creation of a computer-generated receipt-is completely standardized." Beringer at *4; see also Armes II at *5 (same); Shurland, 259 F.R.D. at 159 (predominance met where "[t]he conduct at issue, Defendant's creation of computer-generated credit card receipts, is uniform across the class"); Rogers at *5 ("one common legal issue predominates in this case—whether the receipts printed by Defendant violate 15 U.S.C. § 1681c(g)").

As noted in Section II(B), *supra*, the creation of Rouses' computer generated receipts was completely standardized at Store Nos. 24-41 and 44-47, as the "show expiration date" setting on Rouses' standardized point-of-sales software was set to "Y".  In its interrogatory responses, Rouses admitted that "[a]ll Rouses stores use identical hardware and software for the printing of the receipts." Ex. 5 at No. 20.  Rouses even provided a chart showing that the Non-Compliant Stores did not start truncating the expiration dates until after the Class Period (i.e. after suit was filed).  Rouses' cashiers are trained (and are required) to provide receipts to all customers, and Rouses believes receipts "should have been" printed for all 14 million transactions.[11]

Second, courts also find predominance in that "[t]he factual question of [a FACTA defendant's] willfulness is one that will predominate the litigation as to each and every proposed class member."  Keller at *9.  Here, as noted above, the question of willfulness is identical with respect to every class member.  This weighs heavily in favor of finding predominance.

---

[11] The fact that some persons exist, who for whatever reason, were never "provided" their printed receipt does not defeat predominance.  See, e.g., Tchoboian at *7 ("Class members share the significant common questions of law as to whether [the defendant] violated FACTA and whether such noncompliance was willful.  [The defendant] contends in response that any assessment of liability requires an individual factual determination of whether each class member was provided a noncompliant receipt…The Court recognizes that there may be some difficulty in determining who received noncompliant receipts.  However, the Court finds that even to the extent that this is the case, the bulk of this action surrounds allegations regarding [the defendant's] conduct.  Thus, to the extent that there are individualized questions, common questions nevertheless predominate.").

Third, courts also reject FACTA defendants' arguments that predominance is not met because some class members may try to recover actual damages and/or individualized inquiry is required with respect to the amount of statutory damages (between $100 and $1,000).   In Beringer, the Court rejected this argument, noting that "Defendant's own expert [Joel Lisker] suggests that actual damages are not possible in this circumstance."  Beringer at *4.  Further, this argument has no merit where the parties "do not point to any instance where a potential class member suffered actual harm from the alleged FACTA violation."  Matthews, 248 F.R.D. at 216. Even so, "[i]n the event a few [FACTA] class members have sustained and want to pursue actual injury, they can opt out and litigate separately."  Armes II at *5; see also Keller at *3 ("[f]or the few individuals who may have been unfortunate enough to have suffered actual damages caused by the printing of FACTA non-compliant receipts, those individuals may be identified easily and excluded from the class").

Here, Mr. Lisker has reappeared on behalf of Rouses to opine "that the fact that the last four digits of the account number and expiration date were printed on the credit / debit card receipt of the Plaintiffs did not expose the Plaintiffs to any risk of harm – from identity theft or otherwise[.]"  Lisker Expert Report, attached hereto as Ex. 14, at 3.  Further, Defendant's expert also testifies that "Rouse's has not experienced any claims of actual harm or damage experienced by its customers as a result of printing the last four digits of the customer's credit card account number together with an expiry date on customer receipts."  Id. at 5.  This was confirmed by Defendant, who testified that Rouses had never been sued for identity theft and had received no customer complaints that information printed on receipts was causing harm.  Corp. Dep. II at 70:23 – 71:17.

Here, questions of law and fact common to class members, most notably whether the

19

standardized receipts violated FACTA and whether Defendant's conduct was willful, are the overarching issues in this case.  Due to the uniformity of Defendant's point-of-sales systems with respect to the receipts and the centralization of Defendant's decision-making (at its headquarters), common issues clearly predominate over any individual issues which might exist.

### 2.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy

Under Rule 23(b)(3), courts evaluate four factors to determine superiority: the class members' interest in individually controlling their separate actions, the extent and nature of the existing litigation by class members concerning the same claims, the desirability of concentrating the litigation in the particular forum, and the likely difficulties in class management.  As noted by one commentator:

> Although a determination of superiority necessarily depends greatly on the circumstances surrounding each case, some generalizations can be made about the kinds of factors the courts will consider in evaluating this portion of Rule 23(b)(3).
>
> The rule requires the court to find that the objectives of the class-action procedure really will be achieved in the particular case. In determining whether the answer to this inquiry is to be affirmative, the court initially must consider what other procedures, if any, exist for disposing of the dispute before it. The court must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court.

7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1779 (3d ed. 2005).

In FACTA cases, "[c]ourts routinely find class resolution superior[.]"  Bush at *11. FACTA courts cite a number of factors supporting a finding of superiority, including: (1) the number of receipts / class members at issue, (2) the high litigation cost set against the low

potential recovery, (3) the fact that Class Members are unlikely to prosecute individual claims without the cost-sharing efficiencies of a class action, (4) many of the persons in the class may be unaware that the receipts violated federal law, (5) the available statutory damages are minimal, and (6) the unlikelihood of a large punitive damage award.  See, e.g., Keller at *10 (2,277 receipts "makes other methods, such as joinder or consolidation, impractical in this case"); Rogers at *6 (superiority met because "litigation costs are high and the likely recovery is limited…[and consumers] issued non-compliant receipts are unlikely to prosecute individual claims without the availability of cost-sharing efficiencies of a class action…What's more, many of the persons in this class may be unaware that the receipts issued by Defendant may violate federal law, and a class action suit may help to safeguard their rights"); Tchoboian at *9 (class action superior because FCRA "available statutory damages are minimal"); Stillmock, 385 Fed.Appx. at 274 ("low amount of statutory damages… means no big punitive damages award on the horizon, thus making an individual action unattractive from a plaintiff's perspective").

All six of these factors are present here.  There are over 14 million receipts at issue, making alternatives to class actions impractical (factor 1).[12]  The high litigation costs and low potential recovery inherent in FACTA cases and cited by numerous other courts are equally applicable here (factors 2-3, 5-6).[13]  And it goes without saying that many Class Members are unaware that their receipts violated federal law; indeed, Defendant testified that no customer has

---

[12] The size of the Class (likely in the hundreds of thousands) here does not detract from its manageability; in anything, it demands certification.  Courts routinely certify classes with over one million members.  See, e.g., Sullivan v. DB Investments, Inc., 667 F.3d 273, 289 (3d Cir. 2011) (affirming certification of subclass containing between 67 and 117 million members); In re HP Inkjet Printer Litig., No. 05-3580, 2011 WL 1158635 at *3 (N.D. Cal. Mar. 29, 2011) (certifying class of 13 million class members) (rev'd on other grounds).  Indeed, "[t]he more claimants there are, the more likely a class action is to yield substantial economies in litigation."  Carnegie v. Household Intern., Inc., 376 F.3d 656, 660-61 (7th Cir. 2004) (affirming certification of class containing 17 million members).  This is even more true in this case, where (as explained below), publication notice is appropriate.

[13] While the applicability of these factors are self-evident, counsel for Plaintiff has provided a declaration attesting to the same.  See Gisleson Decl. at ¶¶ 3-7.

ever expressed any awareness that their receipt violated federal law with respect to the expiration date.  Corp. Dep. II at 73:24 – 74:3.

Further, the availability of attorneys' fees under FCRA has been rejected as a basis for denying certification on superiority grounds.  As the Fourth Circuit noted, in reversing a district court's denial of certification, "there is no reasoned basis to conclude that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of FCRA by individual actions of a scale comparable to the potential enforcement by way of class action."  Stillmock, 385 Fed.Appx. at 274.

### 3.   Membership in the class can be confirmed through Defendant's business records

After publication notice (discussed below), membership in the Class by self-identified Class Members may be verified through Defendant's business records.  This too supports a finding that the class action is superior.[14]

For every transaction at issue in the Class Period, Defendant has in its possession the following information: REDACTED

Corp. Dep. II at pp. 84-86.

---

[14] The ability (or lack thereof) to identify Class Members is analyzed by some courts under the "ascertainability" requirement for class actions, while others analyze it under Rule 23(b)(3)'s "superiority" requirement.  Plaintiffs posit that because the issues of identifying class members and/or verifying class membership deal more with manageability, the issue ought to be analyzed under Rule 23(b)(3)'s superiority requirement.  "Ascertainability," on the other hand, deals more with how the Class is defined rather than how the Class Members can be identified.  See, e.g., In re MTBE Prods. Liab. Litig., 241 F.R.D. 185, 196 (S.D.N.Y. 2007) (Scheindlin, J.) (identification of class members does not weigh on ascertainability "because it is the class, not each member, that must be ascertained…The ascertainability of a class depends on whether there will be a definitive membership in the class once judgment is rendered").  Again, ascertainability cannot seriously be contested here since Defendant concedes it has identifying information with respect to every Class Member's non-compliant transaction.

This information is stored as electronic data, and Rouses' ability to search the data are "almost unlimited[.]" Corp. Dep. I at 150:22. Further, the data can be easily exported in almost every imaginable format, including but not limited to an Excel spreadsheet, a CSV file, PDF, or even a flat file with raw data. Corp. Dep. II at 91:12-14, 91:24 – 93:3. In Defendant's own words, "the system is very capable." Id. at 92:7-8.

Thus, it is simple to verify a self-identified Class Member's membership (or lack thereof) in the Class. Putative Class Members need only provide some basic information REDACTED ████████████████████████, and a Settlement Administrator (via online interface / software program or over the telephone) can easily verify Class Membership.

Here, insufficient information exists to effectuate personal notice on Class Members (discussed below as justifying publication notice). However, as many Courts recognize, with publication notice there need only be information sufficient to *verify* membership in the Class of those persons *self-identifying* as Class Members. As one FACTA court explained:

> Although [the d]efendant's own records are not as complete as Defendant itself insists they should be, there is a log listing the receipts issued during the period in which [defendant] was not in compliance with FACTA's truncation requirement. The log includes partial credit card information for each transaction, the date it occurred, and the amount of the transaction. This information can, as [the p]laintiff explains, be used to verify whether any individual who responds to class notice is in fact a member of the class. The court concludes the class is sufficiently definite and overrules Defendant's objection on this basis.

Shurland v. Bacci Café & Pizzeria on Ogden, Inc., 271 F.R.D. 139, 147 (N.D. Ill. 2010); see also Bush at *5 (in FACTA case, credit card logs sufficient to verify membership in Class); Beringer at *6 ("[n]umerous cases have proceeded under FACTA in this district and others on similar facts, and the court is unaware of any instance where identifying the class members posed a substantial manageability obstacle to certification").

23

Further, Class Members could also prove membership in the Class by producing a copy of a bank or credit card statement during the Class Period. Because it is undisputed that all registers were printing non-compliant receipts at the Non-Compliant stores during the Class Period, a putative class member need only show proof of a credit / debit card purchase at one of those stores during the Class Period. Further, each Rouses' store number has a unique identifier when it is transmitted to Rouses' payment processor, such that the name of the merchant on the customer's statement is not just, e.g., "Rouses Market" but "Rouses Market # 26". Corp. Dep. II at 98:7 – 99:21. This is confirmed by Plaintiffs' own statements, wherein three different card-issuing banks (Chase, Bank of America, and Capital One) list the store *number*. See PLAINTIFFS 77, 82, 202, attached hereto as Ex. 15. Thus, alternatively, self-identifying individuals may provide a copy of a bank statement to verify membership in the Class.

### E.  The Proposed Class Is Ascertainable / Objectively Defined

"'[I]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" Union Asset Mgmt. Holding A.G. v. Dell, Inc., 669 F.3d 632, 639 (5th Cir. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)). "The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23." John v. Ntl. Sec. Fire & Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007).

Here, the Class is defined with respect to objective criteria – all persons who made a credit or debit card transaction at a particular set Rouses stores during a particular date range. Accordingly, the proposed class is ascertainable.

### F.  Notice Can Be Achieved Through Publication

Since here, the names and addresses of class members cannot be identified, publication

notice is appropriate.  As noted by the Fifth Circuit, "publication is not a substitute for personal notice **if** the individual's name **and** address were ascertainable through reasonable efforts[.]"  In re Combustion, 103 F.3d 124 (5th Cir. 1996) (citing In re Nissan Motor Corp. Antitrust Litigation, 552 F.2d 1088, 1097 (5th Cir. 1977)).  Publication notice is "effective only if the class members who see the notice are likely to recognize themselves as the class members described."  Villagran v. Central Ford, Inc., 524 F.Supp.2d 866, 885 (S.D. Tex. 2007).[15]

Here, Rouses does not maintain the "contact information" of customers using credit or debit cards.  Ex. 5 at No. 17.  According to Defendant, with the information in its database, it "couldn't take that and contact anyone."  Corp. Dep. II at 88:8-9.  Defendant's expert agrees, writing that "[t]his information could not be used to obtain contact information for the purpose of providing notice to members of the putative class[.]"  Lisker Report, Ex. 14 at 5.  Thus, because personal notice is not possible, publication notice is permissible.

Further, publication notice will be effective in this case.  People who see the notice, which will list the store addresses and dates between which purchases must have been made, will be able to easily identify as class members.  Accordingly, notice can be made through publication.  Upon certification of the Class, Class Counsel will submit a proposed Notice Plan.[16]

## IV.    **CONCLUSION**

For the aforementioned reasons, Plaintiffs' Motion should be granted in its entirety.

---

[15] The Court in Villagran, found that publication notice would *not* be effective because membership in the Class was defined with respect to being the recipient of junk mail, which most people throw away and would therefore not remember.  Thus publication notice would not enable the public to self-identify as Class Members.  Such is not the case here, where people know if they shop at Rouses.

[16] Given the simplicity of managing this case, it is not necessary for Plaintiffs to submit a trial plan.  The Defendant has already conceded that the receipts at the Non-Compliant Stores during the Class Period reveal the expiration date (and Defendant's expert concedes that these indeed did violate FACTA).  The only remaining liability issue is "willfulness" (i.e., Defendant's knowledge) which will be determined based upon the deposition testimony of a handful of corporate, high level representatives.  Further, since damages are statutory and not actual, they are calculable without a need for a separate proceeding.

Dated: December 24, 2013                    Respectfully submitted,

**HERMAN, HERMAN & KATZ, LLP**

By: */s/ Soren E. Gisleson*
    Russ M. Herman (La. # 6819)
    Stephen J. Herman (La. # 23129)
    Soren E. Gisleson (La. # 26302)
    820 O'Keefe Avenue
    New Orleans, Louisiana 70113
    Tel: (504) 581-1892
    Fax: (504) 561-6024
    rherman@hhkc.com
    sherman@hhkc.com
    sgisleson@hhkc.com

    M. Ryan Casey (La. # 31092)
    Brian T. Ku (*pro hac vice*)
    **KU & MUSSMAN, P.A.**
    12550 Biscayne Blvd., Suite 406
    Miami, Florida 33181
    Tel: (305) 891-1322
    Fax: (305) 891-4512
    ryan@kumussman.com

    Andrew D. Bizer (La. # 30396)
    **BIZER LAW FIRM, LLC**
    757 St. Charles Ave., Suite 302
    New Orleans, Louisiana 70130
    Tel: (504) 619-9999
    Fax: (504) 592-3300
    andrew@bizerlaw.com

    *Attorneys for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 24, 2013, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system which will send notice of electronic filing to all counsel of record in this matter.

    */s/ Soren E. Gisleson*
    Soren E. Gisleson, Esq.