## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROBERT TICKNOR, et al.,**
    **Plaintiffs**

**CIVIL ACTION**

**No. 12-1151**

**VERSUS**

**SECTION "E"**

**ROUSES ENTERPRISES, LLC,**
    **Defendant**

**This document applies to 12-1151**

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT
## OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs, by and through undersigned counsel, hereby file this reply memorandum in support of Plaintiffs' Motion for Class Certification (Dkt. No. 86-1) ("Pl. Br."), responding to the factual assertions and arguments set forth in Defendant's Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 114) ("Def. Br."). For all of the reasons provided in Plaintiffs' original memorandum and herein, Plaintiffs' Motion for Class Certification should be granted.

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   DEFENDANT DISTORTS PLAINTIFFS' DEPOSITION TESTIMONY ........................... 1

III.  DEFENDANT'S FLAWED LEGAL REASONING ................................................... 3

    A.   The Proposed Class is Ascertainable / Objectively Defined ....................... 3

    B.   Rule 23(a)'s Typicality Requirement is Met ............................................. 4

    C.   Rule 23(a)'s Adequacy Requirement is Met ............................................. 5

    D.   Rule 23(b)(3)'s Predominance Requirement is Met.................................... 5

        1.   Defendant's mischaracterization of Fifth Circuit jurisprudence .................. 6

        2.   The overriding factual and legal issues are common to the Class ............... 7

        3.   Those "overriding" common questions plainly predominate over the three rare scenarios hypothesized by Defendant ........................................... 7

            (a)   Whether Class Members actually received a receipt........................... 8

            (b)   Whether the purchase was made for an individual rather than a business purpose ............................................................................. 9

            (c)   Whether the individual is a "cardholder" ........................................ 12

    E.   Rule 23(b)(3)'s Superiority Requirement is Met ........................................ 12

        1.   Defendant's "ruinous damages" argument is not appropriate for certification analysis and/or may be raised later in the proceeding ........... 12

        2.   FACTA's provision for attorneys' fees does not defeat superiority ........... 15

IV.   CONCLUSION.................................................................................................. 15

## TABLE OF CASES

### *Case Law*

Arabian v. Sony Electronics, Inc.,
    No. 05-1741, 2007 WL 627977 (S.D. Cal. Feb. 22, 2007) .................................................. 11

Armes v. Shanta Enterprise, Inc.,
    No. 07-5766, 2009 WL 2020781 (N.D. Ill. Jul. 8, 2009).................................................... 13

Armes v. Sogro, Inc.,
    No. 08-244, 2011 WL 1197537 (E.D. Wis. Mar. 29, 2011) ...................................... 9, 12, 13

Ballard v. Branch Banking & Trust Co.,
    284 F.R.D. 9 (D.D.C. 2012) ................................................................................................ 11

Bateman v. American Multi-Cinema, Inc.,
    623 F.3d 708 (9th Cir. 2010)...................................................................................... 13, 14, 15

Bateman v. American Multi-Cinema, Inc.,
    252 F.R.D. 647 (C.D. Cal. 2008) ................................................................................... 13, 14

Beringer v. Standard Parking Corp.,
    No. 07-5027, 2008 WL 4390626 (N.D. Ill. Sep. 24, 2008) ............................................ 4, 10

Boggs v. Alto Trailer Sales, Inc.,
    511 F.2d 114 (5th Cir. 1975)............................................................................................... 13

Boundas v. Abercrombie & Fitch Stores, Inc.,
    280 F.R.D. 408 (N.D. Ill. 2012) ........................................................................................... 4

Ehren v. Moon, Inc.,
    No. 09-21222, 2011 WL 345850 (S.D. Fla. Feb. 1, 2011).................................................. 15

Engel v. Scully & Scully, Inc.,
    279 F.R.D. 117 (S.D.N.Y. 2011).......................................................................................... 7

Gene and Gene L.L.C. v. BioPay, L.L.C.,
    541 F.3d 318 (5th Cir. 2008)............................................................................................. 7, 8

Gist v. Pilot Travel Centers, LLC,
    No. 08-293, 2013 WL 4068788 (E.D. Ky. Aug. 12, 2013)................................................ 8, 9

Grimes v. Rave Motion Pictures Birmingham, L.L.C.,
    264 F.R.D. 659 (N.D. Ala. 2010) ...................................................................................... 8, 9

Hammer v. JP's Southwestern Foods, L.L.C.,
    739 F.Supp.2d 1155 (W.D. Mo. 2010)............................................................................... 11

Hammer v. JP's Southwestern Foods, L.L.C.,
    267 F.R.D. 284 (W.D. Mo. 2010) ........................................................................ 12

Harris v. Circuit City Stores, Inc.,
    No. 07-2512, 2008 WL 500862 (N.D. Ill. Feb. 7, 2008 .................................... 9, 10

In re Deepwater Horizon
    732 F.3d 326 (5th Cir. 2013) ................................................................................ 6

In re Deepwater Horizon
    No. 13-30095, 2014 WL 103836 (5th Cir. Jan. 10, 2014) ................................. 6, 7

Keller v. Macon County Greyhound Park,
    No. 07-1098, 2011 WL 1085976 (M.D. Ala. Mar. 24, 2011) .............. 7, 10, 13, 15

Lewis v. Riddle,
    No. 97-0542, 1998 U.S. Dist. LEXIS 20465 (W.D. La. Nov. 18, 1998) ............ 11

Leysoto v. Mama Mia I, Inc.,
    259 F.R.D. 693 (S.D. Fla. 2009) ......................................................................... 15

Mims v. Stewart Title Guar. Co.,
    590 F.3d 298 (5th Cir. 2009) ................................................................................ 6

Murray v. GMAC Mortg. Corp.,
    434 F.3d 948 (7th Cir. 2006) ........................................................................ 13, 15

Najarian v. Avis Rent A Car System,
    No. 07-588, 2007 WL 4682071 (C.D. Cal. Jun. 11, 2007) .............................. 9, 11

Pezl v. Amore Mio, Inc.,
    259 F.R.D. 344 (N.D. Ill. 2009) ......................................................................... 11

Ratner v. Chemical Bank New York Trust Co.,
    54 F.R.D. 412 (S.D.N.Y. 1972) .......................................................................... 14

Roper v. Consurve, Inc.,
    578 F.2d 1106 (5th Cir. 1978) ............................................................................ 13

Rowden v. Pac. Parking Sys., Inc.,
    282 F.R.D. 581 (C.D. Cal. 2012) ..................................................................... 9, 11

Shurland v. Bacci Café & Pizzeria on Ogden, Inc.,
    259 F.R.D. 151 (N.D. Ill. 2009) .................................................................. 4, 5, 10

Stillmock v. Weis Markets, Inc.,
    385 Fed.Appx. 267 (4th Cir. 2010) ............................................................. 7, 8, 13

iv

Tchoboian v. Parking Concepts, Inc.,
    No. 09-422, 2009 WL 2169883 (C.D. Cal. Jul. 16, 2009) ...................................... 7, 8, 13, 15

**_Statutes and Regulations_**

15 U.S.C. § 1681 ..............................................................................................*passim*

Fed. R. Civ. P. 23 ............................................................................................*passim*

**_Other Materials_**

Manual for Complex Litigation (4th ed.) .................................................................. 3, 4

Newberg on Class Actions (4th ed.) ............................................................................ 4

## I.      INTRODUCTION

For all of the reasons provided herein and in Plaintiffs' original Memorandum in Support of their Motion for Class Certification, Plaintiffs' Motion should be granted.

## II.     DEFENDANT DISTORTS PLAINTIFFS' DEPOSITION TESTIMONY

Defendant distorts the Plaintiffs' deposition testimony in various areas, including those relating to their knowledge and participation in the case (id. at 34), their compliance with discovery obligations (id. at 34-35), their relationships with counsel (id. at 9), and their motivation in bringing suit (id. at 9-10). Defendant relies on these misrepresentations in an attempt to construe this suit as belonging to a "glut of opportunistic [and lawyer-driven] lawsuits" (Def. Br. at 7).

For example, Defendant claims that Mr. Russell first read the Complaint just prior to the deposition and was further unsure if he had ever seen it. Id. at 34. But he actually testified that he *had* seen the Complaint prior to his pre-deposition meeting (Russell Dep., attached hereto as Ex. 16, at 23:22-25) and that he believed the *first* time he saw it was in May 2012 when he signed his representation agreement, which occurred prior to the case being filed (id. at 24:2-6, 55:23 – 57:8). Similarly disingenuous are claims that Messrs. Russell and Ticknor understand neither the Class membership nor the number of violations (Def. Br. at 34). See id. at 14:19-21 (describing Class "anyone who used their card at Rouse's, and received a [non-compliant] receipt"); 54:7-12 (aware that Rouses committed 14.6 million violations); Ticknor Dep., attached hereto as Ex. 17, at 28:12-15 (describing class as "[e]veryone who shopped at Rouse's and received a credit card receipt with the expiration date on it"). Defendant claims that Mr. Russell had "not reviewed…*any* of the discovery responses" (Def. Br. at 34), but he only testified that he had not reviewed the *Defendant's* discovery responses. Russell Dep. at 45:7-13. Defendant's claims that "[a]ll three Plaintiffs admit that they have done nothing to evaluate their attorney's qualifications" (Def. Br. at 34) is likewise false. See Russell Dep. at 22:5-7; Ticknor Dep. at 21:9, 23:6-9, and 24:7-10; and Cutler Dep., attached hereto as Ex. 18, at 20:5-9. Defendant's statement that Mr. Cutler "was confused about what FACTA even is" (Def. Br. at 34) is belied by his testimony, in which he testified he was aware

of the truncation requirements well before suit was filed. Cutler Dep. at 42:8-23.

Defendant also misconstrues Plaintiffs' testimony with respect to their discovery obligations. Incredibly, Defendant claims that "Plaintiffs admitted that they have emails related to this case and that they never did any searches of their email in order to comply with the Court's order." Def. Br. at 35. But Messrs. Russell and Cutler explained that they had no emails with anyone *other than their lawyers* and had provided responsive documents (Russell Dep. at 33:23 – 34:5, 45:15-23, 51:6-10; Cutler Dep. at 39:11-19), and counsel for Defendant never bothered to ask Mr. Ticknor if he had any *non-privileged* emails (Ticknor Dep. at 11:9-11). Defendant claims that Mr. Russell testified that he had numerous receipts that he did not produce, yet failed to flesh out in the deposition whether those receipts included receipts *from Rouses*. Russell Dep. at 49:5-8; see also Pls.' Resp. to Def.'s Doc. Requests, attached hereto as Ex. 19 at No. 1 (objecting to request for all printed receipts as overly broad but providing receipt for last pre-suit purchase).

Defendant also grossly exaggerates the relationships between Plaintiffs and/or their counsel. For example, Defendant claims that Mr. Ticknor "knows [Roberts' class representative] Doores through his band" (Def. Br. at 9), but fails to mention that Mr. Ticknor actually testified that he "know[s] who he is" but "do[es] not know him personally." Ticknor Dep. at 63:18-20. Defendant construes the relationship between Mr. Ticknor and Mr. Casey as that of "longtime friends", but fails to disclose that the two did not meet socially until 2010 (and that Mr. Casey moved away from New Orleans in 2011). Ticknor Dep. at 20:19-20. Defendant claims that all three plaintiffs are "close friends" with Mr. Bizer (Def. Br. at 9), a statement belied by the deposition testimony. Ticknor Dep. at 21-22 (occasionally crosses paths with Mr. Bizer at music events); Cutler Dep. at 17:15-16 ("we have a professional relationship").

Even more ridiculous is Defendant's assertion that Plaintiffs' counsel "urged" the plaintiffs to go shop at Rouses in order to bring suit. Def. Br at 9-10. While Plaintiff Ticknor was advised by counsel about the requirements of FACTA, he was told nothing about Rouses, and discovered for himself that Rouses was not in compliance following his shopping experience. Ticknor Dep. at

45:12-23, 46:12-24.  Following Mr. Ticknor's revelation, Mr. Russell and Mr. Cutler each had brief encounters with Mr. Bizer, who mentioned that he was involved in a pre-suit investigation of Rouses, and Defendant omits the fact that all three individuals were *long-time* Class Members, having shopped at Rouses regularly for years, and that their last trip to Rouses' prior to filing this action was in the normal course of their shopping.  See Russell Dep. at 35:6-24; 37:16 – 38:7, 39:16 – 40:10; Ticknor Dep. at 38:23 – 39:11; 48:9-11; Cutler Dep. at 24:19 – 25:7 and 25:15-23.

Defendant takes liberties with the record in an attempt to establish its conspiratorial narrative, but the facts are simply not there.[1]  As described below, Defendant also mischaracterizes legal precedent, construing minority opinions as 5th Circuit precedent and failing to disclose that *numerous* decisions it cites were *overturned* and are no longer good law.

## III.   DEFENDANT'S FLAWED LEGAL REASONING

Defendant does not, and cannot, refute the obvious legal trend toward certifying FACTA cases, wherein courts note that FACTA cases are indeed perfect for class certification.  See Pl. Br. at 12-13.  As noted below, Defendant relies on misconstruing Fifth Circuit caselaw, decisions which have been overturned (which Defendant does not disclose), and a small smattering of cases that are outliers of the certification trend and are heavily distinguishable on the facts.

### A.   The Proposed Class is Ascertainable / Objectively Defined

Rouses contends that Rule 23's ascertainability requirement is not met because "Plaintiffs have not made any showing of how the purported class members would be ascertained."  Def. Br. at 32.  Defendant misunderstands ascertainability as involving the identification of Class Members; but it is actually about the need to *define* a Class objectively.  It is about determining *membership* in the Class, not about determining the *actual members* of a class.  As the Manual explains:

> The [class] definition must be precise, objective, and presently ascertainable....
> Although the identity of individual class members need not be ascertained before class
> certification, the membership of the class must be ascertainable.  Because individual
> class members must receive the best notice practicable and have an opportunity to opt

---

[1] This extends to Defendant's interpretation of the facts that relate to its own 'willfulness'.  Plaintiffs do not have space to address those arguments here and respectfully refer to the Court to their previous brief, but it suffices to say that at the *class certification stage*, even Defendant's characterization of the facts demonstrate that the issue of 'willfulness' can be determined on a classwide basis, since it involves decision made on a corporate level.

> out…Rule 23(b)(3) actions require a class definition that will permit identification of individual class members…An identifiable class exists if its members can be ascertained by reference to objective criteria. The order defining the class should avoid subjective standards (e.g., a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against).

MANUAL FOR COMPLEX LITIGATION § 21.222 (4th ed. 2012) (emphasis added).[2]

Here, the Class is defined with respect to objective criteria: all persons who made a debit or credit card transaction at a particular set of stores during a particular date range. Individuals receiving notice will be able to identify whether or not they are Class Members, and hence the Class Definition is ascertainable. The ascertainability requirement is therefore satisfied.[3]

Defendant's poorly reasoned argument regarding whether individual issues as to which Class Members were actually "provided" a receipt (Def. Br. at 30-32) is not a matter of "ascertainability" but rather one of predominance, which Plaintiff addresses below.

## B. Rule 23(a)'s Typicality Requirement is Met

FACTA forbids the printing of expiration dates on receipts provided to cardholders. Defendant contends that Mr. Cutler "does not satisfy this requirement as his purchase was made with his mother's American Express card" and thus he does not satisfy Rule 23(a) typicality. Id. at 5, 32. But Defendant fails to tell the Court that the card is issued in Mr. Cutler's name, thus making him a "cardholder," and that Mr. Cutler testified that he is in part responsible for the bill. Cutler Dep. at 27:19 – 28:7. Mr. Cutler is thus a cardholder and satisfies typicality. See, e.g., Shurland, 259 F.R.D. at 160 (quoting 15 U.S.C. § 1602(m)) ("[w]hile 'cardholder' is not specifically defined

---

[2] See also Boundas v. Abercrombie & Fitch Stores, Inc., 280 F.R.D. 408, 417-18 (N.D. Ill. 2012) ("[The defendant] argues that class membership is not ascertainable because, with the exception of a small proportion of individuals identified by its records, the class members cannot presently be identified. The argument's premise is that absent class members' actual identities must be ascertained before a class can be certified. That premise is incorrect…It is enough that the class be ascertainable. The class in this case consists primarily of individuals holding an Abercrombie promotional gift card whose value was voided on or around January 30, 2010. That criterion is as objective as they come. The class also includes individuals who threw away their cards because they were told that the balances had been voided. That criterion is not as objective as actually holding a physical card, but anybody claiming class membership on that basis will be required to submit an appropriate affidavit, which can be evaluated during the claims administration process if [plaintiff] prevails at trial." (quoting 3 NEWBERG ON CLASS ACTIONS § 10:12 (4th ed.)).

[3] See, e.g., Beringer v. Standard Parking Corp., No. 07-5027, 2008 WL 4390626 at *6 (N.D. Ill. Sep. 24, 2008) ("Numerous cases have proceeded under FACTA in this district and others on similar facts, and the court is unaware of any instance where identifying the class members posed a substantial manageability obstacle to certification"); Shurland v. Bacci Café & Pizzeria on Ogden, Inc., 259 F.R.D. 151, 158 (N.D. Ill. 2009) (nothing that in FACTA cases, "[m]any courts, including this one, have certified classes under nearly identical circumstances, where the identities of individual class members were not yet ascertained").

under FACTA, the term appears in the general provisions of Title 15 and is defined broadly as 'any person to whom a credit card is issued *or* any person who has agreed with the card issuer to pay obligations arising from the issuance of a credit card to another person'").

### C.        Rule 23(a)'s Adequacy Requirement is Met

Plaintiffs satisfy Rule 23(a)'s adequacy requirement.  As noted above, Defendant relies on mischaracterizations of Plaintiffs' deposition testimony (Def. Br. at 33-36).  Further, "[t]he class representatives, when questioned by defense counsel: (1) knew that the case regarded violations of FACTA's Receipt Provision as to the expiration dates, (2) knew the identity (and to some extent the qualifications) of their attorneys, (3) knew the stage of litigation to which the case had proceeded, (4) knew the Class of persons they were seeking to represent, (5) knew they were seeking statutory (as opposed to actual) damages, (6) understood their role as class representatives, and (7) understand their role in looking out for the best interests of the class."  Pl. Br. at 16 (citing deposition transcripts).  Plaintiffs will fairly and adequately protect the interests of the Class.

Class Counsel will also protect the interests of the Class, and the Court should disregard Defendant's unsubstantiated accusations of misconduct. As an initial matter, Defendant's argument that individuals who are advised of their statutory rights by an attorney are by virtue of that conversation precluded from enforcing those rights is farcical. Further, as noted above, Mr. Ticknor discovered Rouses' non-compliance, and all three class representatives had been shopping at Rouses *for years*, had standing long before counsel mentioned Rouses to them, and returned to Rouses to do personal shopping.  Accusations regarding solicitation are simply baseless, as is Defendant's assertion that Plaintiffs and their counsel have failed to comply with discovery orders.

### D.        Rule 23(b)(3)'s Predominance Requirement is Met

Defendant identifies three questions affecting individual Class Members which it posits defeats Rule 23's predominance requirement.  These are: (1) whether the individual received a receipt; (2) whether the purchase was made for an individual rather than a business purpose, and (3) whether the individual is a "cardholder".  Def. Br. at 21.  But Rule 23(b)(3) only requires that

common questions of fact or law "*predominate* over any questions affecting only individual members[.]"  Predominance does *not*, as Defendant argues, require a finding that no individual questions exist.  See Def. Br. at 17 ("although some elements of the claims are susceptible to class-wide proof, others are not, and therefore the Court will be forced to conduct mini-trials involving the presentation of evidence by every class member").  When the Court properly applies the predominance standard, the overriding factual and legal issues, common to the Class, eclipse the rare scenarios affecting only a small percentage of Class Members hypothesized by Defendant.

### 1.   **Defendant's mischaracterization of Fifth Circuit jurisprudence**

In an attempt to replace the "predominate" standard with an "all-or-nothing" standard of its own creation, Defendant mischaracterizes caselaw.  Defendant writes that the Fifth Circuit established a rule that it is "improper to certify a class if some of the members" do not have standing.  Def. Br. at 17-18 (quoting In re Deepwater Horizon, 732 F.3d 326, 342 (5th Cir. 2013) ("Deepwater Horizon I").  Therefore, Defendant argues, because the Class Definition may encompass a small number of individuals lacking standing, it is "at odds with the Fifth Circuit's mandate that a court may not certify a class where any of the members do not have standing to bring suit."  Def. Br. at 18.  According to Rouses, the Court must follow the Fifth Circuit "rule that a court may not certify a class where even a single member lacks standing to bring suit."  Id. at 3.

This supposed "Fifth Circuit mandate" is found in Part II of Judge Clement's opinion.  Deepwater Horizon I, 732 F.3d at 340-345.  However, no other judge joined in Part II.  Id. at 346, 358.  Thus Defendant has misconstrued the minority position held by one judge as a Fifth Circuit "mandate".  The actual position held by the Fifth Circuit is far less rigid than what Defendant proposes.  See, e.g., Mims v. Stewart Title Guar. Co., 590 F.3d 298, 308 (5th Cir. 2009) ("[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct"); In re Deepwater Horizon, No. 13-30095, 2014 WL 103836 at *9 (5th Cir. Jan. 10, 2014) ("Deepwater Horizon II") (discussing "inappropriateness of reviewing evidence

of absent class members' standing at the Rule 23 stage").[4]

### 2.   The overriding factual and legal issues are common to the Class

Defendant's concession that "some elements of the claims are susceptible to class-wide proof" (Def. Br. at 17) is an understatement.  Indeed, in a FACTA case, "[t]he overriding legal issue is whether [the defendant's] non-compliance was willful so that the class members are entitled to statutory damages."  Tchoboian v. Parking Concepts, Inc., No. 09-422, 2009 WL 2169883 at *5 (C.D. Cal. Jul. 16, 2009) (certifying class even though "there may be some difficulty in determining who received a noncompliant receipt"); Keller v. Macon County Greyhound Park, No. 07-1098, 2011 WL 1085976 at *6 (M.D. Ala. Mar. 23, 2011) ("[t]he overriding factual questions will include whether each member of the proposed class received a FACTA non-compliant receipt from [the defendant] after the FACTA compliance deadline").  As explained in Plaintiffs' Brief, the overriding issues here are susceptible to classwide proof, a fact even Defendant does not dispute.

### 3.   Those "overriding" common questions plainly predominate over the three rare scenarios hypothesized by Defendant

Defendant provides three hypothetical questions it claims preclude a finding of predominance; namely (1) whether the individual received a receipt; (2) whether the purchase was made for an individual rather than a business purpose, and (3) whether the individual is a "cardholder".  Def. Br. at 21.  The three scenarios hypothesized by Defendants are rare and are plainly eclipsed by the overriding factual and legal issues common to the Class.  Courts routinely reject these same scenarios as a basis for denying certification, and the cases cited by Defendant comprise a tiny minority of opinions.[5]  Moreover, they are factually distinguishable.

---

[4] Alternatively, Defendant's arguments can be addressed by modifying Plaintiffs' Class Definition.  See, e.g., Stillmock v. Weis Markets, Inc., 385 Fed.Appx. 267, 270 (4th Cir. Jul. 1, 2010) (class defined as "all persons [who]…received from Defendant…an electronically printed receipt…which contained more than the last five digits of the person's credit or debit card number").  Other courts, however, have removed references to "receiving truncated receipts," instead certifying FACTA classes as "all persons who made in-store purchased from the Defendant using a debit or credit card."  Engel v. Scully & Scully, Inc., 279 F.R.D. 117, 127 (S.D.N.Y. 2011).  Plaintiffs' proposed Class Definition already excludes commercial entities.  Pl. Br. at 12.

[5] Defendant also cites Gene and Gene LLC v. BioPay, LLC, 541 F.3d 318 (5th Cir. 2008), for the proposition that this case would require "individual mini-trials" with respect to each Class Member.  Def. Br. at 12.  In Gene and Gene, the Fifth Circuit held that in a Telephone Consumer Protection Act ("TCPA") "junk fax" case, class certification was inappropriate because the issue of consent could not be established via class-wide proof.  Id.  However, in that case, the defendant introduced a significant amount of evidence that a great percentage of putative class members had consented.

(a)        **Whether Class Members actually received a receipt**

Defendant's argument that some Class Members may not have been "provided" receipts "either because the retailer fails to provide it or because the customer declines [it]" (Def. Br. at 5) does not defeat predominance.[6]    This scenario, which Defendant admits is rare as it would contravene its standard policies and practices, is certainly not of the magnitude so as to defeat predominance.  As one court noted:

> The [c]ourt recognizes that there may be some difficulty in determining who received noncompliant receipts.  However, the [c]ourt finds that even to the extent that this is the case, the bulk of this action surrounds allegations regarding [the defendant's] conduct.  Thus, to the extent that there are individualized questions, common questions nevertheless predominate.

Tchobian at *7.  The same is true here.

The three FACTA cases cited by Defendant here represent the minority position and are distinguishable on the facts.  In Gist, the FACTA violation occurred at a gas station, whereat "[r]eceipts from these transactions would be generated inside Pilot locations at the register; transactions that occurred solely at one of Pilot's diesel fuel pumps never produced a receipt."  Gist v. Pilot Travel Centers, LLC, No. 08-293, 2013 WL 4068788 at *2 (E.D. Ky. Aug. 12, 2013).  "In other words," the court wrote, "the only times receipts would be generated from fleet card transactions would be when a customer entered the store to purchase something there or when a customer decided to go inside to request a receipt."  Id.  Further, non-compliance was not uniform at the defendant's locations, and the record reflected that only "a very small portion" of the receipts at the locations in question were non-compliant.  Id.

Another case cited by Defendant involved receipts at movie theaters in twelve states. Grimes v. Rave Motion Pictures Birmingham, L.L.C., 264 F.R.D. 659, 662 (N.D. Ala. 2010).  Non-compliance was not uniform across these locations, nor even within the locations, because each point-of-sales machine was configured differently, and only "some point of sale terminals and self-

---

Id. at 323.  This is in stark contrast to the situation here, where Defendant presents *no evidence* of how many putative class members may have unique defenses, and common sense indicates this number will be small.

    [6] As an initial matter, statutory damages under FACTA "are to be awarded on a per consumer basis", not a "per violation basis."  Stillmock, 385 Fed.Appx. at 272.  Thus the argument that "[e]ven someone who regularly obtains a receipt with their purchases likely cannot be certain that a receipt was always obtained" (Def. Br. at 5) misses the mark.

serve kiosks were not properly configured to meet FACTA standards[.]"  Id.  Because of this, the court concluded, "there is no way to determine who was or was not issued a FACTA non-compliant receipt….except for those issued to [plaintiff] or to unknown and virtually unknowable persons who may have received and for some reason preserved them."  Id. at 665.

The third case Defendant cites is Najarian v. Avis Rent A Car Sys., No. 07-588, 2007 WL 4682071 at *3 (C.D. Cal. Jun. 11, 2007).[7]  In Avis Rent A Car, the defendant's receipt procedures (and whether non-compliant receipts were issued) changed depending on the "preferred service" status of the rent-a-car customer and how the customer ultimately returned the car.  Id. at *1.

Gist, Grimes, and Avis Rent A Car are obviously distinguishable.  As noted previously (Pl. Br. at 9), every receipt printed at Rouses Store Nos. 24-41 and 44-47 was non-compliant during the Class Period.  Thus, the only cases Defendant cites regarding 'who received non-compliant receipts' are distinguishable.  Here, every receipt provided to customers at Store Nos. 24-41 and 44-47 during the Class Period failed to comply.  Further, Defendant here provides receipts as a matter of routine for all transactions (unlike in Gist where most transactions did not generate receipts).

**(b)   Whether the purchase was made for an individual rather than a business purpose**

Rouses' "business card" argument does not defeat predominance.  This defense would only affect a small percentage of putative class members who do their business shopping – but not their personal shopping – at Rouses.  This issue can be resolved during the claims process, and is not of such magnitude as to defeat predominance.  The majority of the courts examining this argument reject it.  See, e.g., Armes v. Sogro, No. 08-244, 2011 WL 1197537 at *3 (E.D. Wis. Mar. 29, 2011) ("whether corporate purchasers exist goes to the right of putative class members to participate in any class recovery, not to the threshold question of whether a class should be certified");[8] Harris v.

---

[7] In its brief, Defendant attributes to the quote "(1) he or she obtained a 'receipt' under the meaning of the statute and 2) that he or she was acting as a 'consumer'" to Rowden v. Pac. Parking Sys., Inc., 282 F.R.D. 581 (C.D. Cal. 2012) (Def. Br. at 22 fn. 79), but Rowden said no such thing – instead, the quote is taken from Avis Rent A Car.

[8] The Armes court found this was not an issue in part because the plaintiff had defined the Class as applying to "'persons' using 'the person's' credit or debit card."  Armes at *3.  Here, Plaintiffs have excluded commercial entities from the Class.  Alternatively, the Court may modify the Class Definition.

9

<u>Circuit City Stores, Inc.</u>, No. 07-2512, 2008 WL 400862 at *6 (N.D. Ill. Feb. 7, 2008) (commercial purchaser argument "does not render class treatment of this case inappropriate"); <u>Beringer</u> at *6 (business card problem not "insurmountable"); <u>Keller</u> at *8 (business card argument only relevant if applied to class representatives); <u>Shurland</u>, 259 F.R.D. at 160 ("the court is not troubled by the fact that Plaintiff's proposed class is not limited to transactions made with 'consumer' credit cards").

Rouses offers no evidence regarding how many commercial purchases may exist in the class, but common sense assumptions lead one to believe that the number is low.  As noted above, statutory damages under FACTA are provided on a *per consumer*, not a *per transaction* basis. Thus, the only putative Class Members who would be excluded from recovering under Defendant's theory are those that have made commercial purchases at Rouses but have never made personal purchases at Rouses.  Rouses claims that its "own advertising campaign – 'Where the chefs shop' – illustrates [that] many purchases made at Rouses are for business purposes" (Def. Br. at 6), but it follows that those same chefs are shopping at Rouses for their personal shopping needs as well.

According to Rouses, it had no idea how to determine what percentage of its shoppers might be business-only shoppers.  See Corp. Dep. II, attached hereto as Ex. 20, at 54:25 – 55:20.  Rouses also maintains an "Accounts Receivable Database" which are companies that have a line of credit with Rouses and who do not pay with credit cards, and for which accounted for 49,000 transactions at the Non-Compliant stores during the Class Period.  Dkt. No. 86-9 at 9; Corp. Dep. II at 39:4-8. Further, when studying their potential profit in new markets, Rouses' income projections are based *solely* on the demographics and income of personal households in the area, not local businesses. <u>See</u> Rouses Market Analysis, attached hereto as Ex. 21.  Rouses' "theoretical possibility" of business-only customers does not rise to a level defeating predominance, as one court noted:

> Nor is the argument that some of the 110,000 putative class members may have been commercial and not consumer purchasers a persuasive argument…Circuit City has offered this argument as a theoretical possibility, without suggesting even in broad terms how many commercial purchasers may exist among the 110,000 putative class members. We are skeptical that the number is great, relative to overall putative class size.

<u>Harris</u> at *6.

All the cases Defendant cites are distinguishable.  Defendant relies solely on (predominantly

non-FACTA) opinions in which a "business entity" reason was used to deny certification of a putative class that included a large number of (if not mostly) business transactions.  Elsewhere, Defendant cites cases where the *class representatives themselves* were subject to the business entity defense.  As noted by the court in <u>Rowden</u>, a case on which Defendant relies heavily:

> With regard to the parking lots in question located nearby banks, offices, and other businesses, it is more than likely that many of the class members used Laguna Beach's parking lots for business purposes.  Indeed, even [plaintiff] himself purchased tickets with both his personal and business credit cards.

<u>Rowden</u>, 282 F.R.D. at 586.  Every other case cited by Defendant is distinguishable on these or other grounds.  See <u>Ballard v. Branch Banking & Trust Co.</u>, 284 F.R.D. 9, 16 (D.D.C. 2012) (in non-FACTA case, court found that "it is highly likely that the class could, at best, consist of a handful of consumers, or at worst, be a class of one—plaintiff"); <u>Hammer v. JP's Southwestern Foods, L.L.C.</u>, 739 F.Supp.2d 1155, 1160 (W.D. Mo. 2010) (restaurant with large portion of business attributed to business lunches and dinners);[9] <u>Avis Rent A Car</u> (rent-a-car business plainly involves mostly business customers);[10] <u>Arabian v. Sony Electronics, Inc.</u>, No. 05-1741, 2007 WL 627977 at *4 (S.D. Cal. Feb. 22, 2007) (in non-FACTA case, *class representatives* were subject to unique business purchaser defense); <u>Lewis v. Riddle</u>, No. 97-0542, 1998 U.S. Dist. LEXIS 20465 at *12-13 (W.D. La. Nov. 18, 1998) (in non-FACTA case, class encompasses purchases made at stores that not typically through of a serving consumers rather than businesses); <u>Gist</u> at *1 (dealt not with "credit cards" but with "fleet cards" issued to truck drivers and plaintiff "used this card solely for the business purposes of his unregistered sole proprietorship"); <u>Pezl v. Amore Mio, Inc.</u>, 259 F.R.D. 344, 348 (N.D. Ill. 2009) (class representative's "transaction was for business purposes").

The "business card" defense does not apply to the class representatives, nor has Defendant shown that it would apply to more than a small percentage of class members, distinguishing this case from those cited by Defendant.  Here, if need be, putative class members can merely provide a copy of their statement during the claims process to show that the card belonged to a personal

---

[9] It should be noted that the Court in <u>Hammer</u> twice rejected the business card argument before decertifying the class based on the business card argument just a week before trial.  The Court was growing increasingly frustrated by Class Counsel's failure to meet deadlines, including its failure to provide notice to Class Members.  See Dkt. No. 155.

[10] Def.'s brief (22) attributes the quote to "Najarian v. Charlotte Russe" but it was actually quoting <u>Avis Rent A Car</u>.

account, rather than a corporate account.  As noted by the <u>Armes</u> court, "[p]ersonal debit cards are personal debit cards no matter the purpose of the expense or whether someone's mother, friend, or employer ends up paying the bill or reimbursing the cardholder."  <u>Armes</u> at *3.

(<b>c</b>)        <b><u>Whether the individual is a "cardholder"</u></b>

Equally unavailing is Defendant's argument that some persons receiving receipts may not actually be "cardholders".  This "defense" only affects a small percentage of putative Class Members.  As noted above (pp. 4-5), "consumer" is defined broadly under the Act.  Further, "if the Court determines that a more appropriate class definition focuses on the cardholder and not the recipient, the proposed definition can be amended under Rule 23(c)(1)(B)-(C)."  <u>Hammer v. JP's Southwestern Foods, L.L.C.</u>, 267 F.R.D. 284, 290 (W.D. Mo. 2010) (decertified on other grounds).

**E.      <u>Rule 23(b)(3)'s Superiority Requirement is Met</u>**[11]

**1.      <u>Defendant's "ruinous damages" argument is not appropriate for certification analysis and/or may be raised later in the proceeding</u>**

Relying almost exclusively on a line of cases overturned by the Ninth Circuit, Defendant argues that superiority is not met due to the enormity of damages at issue, which it mistakenly estimates to be $14 billion (Def. Br. at 3).[12]  As noted below, every appellate court that has addressed this issue has rejected Defendant's reasoning, and this Court should as well. Defendant's due process concerns, if any, are best raised later in the proceeding after entry of a judgment.

Defendant's characterization of "Fifth Circuit precedent" regarding "disproportionality of damages to harm suffered" as being a "factor considered at class certification" is misleading.  Def. Br. at 26.  In the two cases cited by Defendant, the Fifth Circuit actually *reversed* the lower court's

---

[11] Defendant does not dispute that "membership in the Class by self-identified Class Members may be verified through Defendant's business records" (Pl. Br. at 22).  Defendant also does not dispute that "since…the names and addresses of class members cannot be identified, publication notice is appropriate" (Pl. Br. at 24-25).  Accordingly, these manageability issues, which are analyzed under the superiority prong, are not discussed further in this brief.

[12] *Alternatively, it is debatable whether damages would even be 'ruinous.'*  Defendant' supposed "$14 billion" in damages it will suffer is *grossly exaggerated*.  FACTA provides statutory damages *per class member, not per transaction*, and so Defendant's math assumes Rouses has 14 million customers, more than three times the population of Louisiana.  Defendant further applies the high end of FCRA's "$100 - $1000" statutory damage range.  One could also assume that the typical Rouses customer is one who shops monthly.  If this were the case, the class size would total approximately 583,000 (the number of transactions divided by 24).  At $100 (as opposed to $1,000) statutory damages per Class Member, this totals $58 million.  Of course the number will be far, far lower than the "potential" liability, given that the percentage of Class Members that file claims after notice are only a fraction of the size of the entire Class.

denial of certification on the grounds of potentially annihilating damages. Boggs v. Alto Trailer Sales, Inc., 511 F.2d 114 (5th Cir. 1975); Roper v. Consurve, Inc., 578 F.2d 1106 (5th Cir. 1978). Indeed, when analyzing superiority, the Court invoked language that is equally applicable here:

> This is a classic case for a Rule 23(b)(3) class action. The claims of a large number of individuals can be adjudicated at one time, with less expense than would be incurred in any other form of litigation. The claims are relatively small, said even by the plaintiffs to average less than $100 each, and the question of law is one that applies alike to all.

Roper, 578 F.2d at 1112. Rather than embracing the notion that the enormity of damages should be considered, the Fifth Circuit warned that it should be done "only in extreme cases." Id. at 1114. Further, the Court looked for congressional intent of "evidence that Congress otherwise sought to protect the net worth of [defendants] against damaging suits" and found that they had not. Id. The court should come to the same conclusion here, especially given the Clarification Act.

Every appellate court that has examined Defendant's argument in the FACTA or FCRA context has rejected it, as well as most district courts. See, e.g., Bateman v. American Multi-Cinema, 623 F.3d 708 (9th Cir. 2010) (in FACTA case, abuse of discretion to deny certification based on enormity of potential damages); Murray v. GMAC Mortg. Corp., 434 F.3d 948 (7th Cir. 2006) (in FCRA case, abuse of discretion to deny certification based on potential liability as contradicting congressional intent); see also Armes at *7 (in FACTA case, rejecting argument that size of statutory damages precludes superiority); Keller at *10-11 (same); Tchoboian at *9 (same); Armes v. Shanta Enterprise, Inc., No 07-5766, 2009 WL 2020781 (N.D. Ill. Jul. 8, 2009) (same).[13]

The Ninth Circuit's Bateman decision, which abrogated the line of Central District of California opinions on which Defendant relies, is instructive. In Bateman, the district court denied certification, "finding that a class action was not the superior method of litigating the case because AMC had made a good faith effort to comply with FACTA after this lawsuit was filed and the magnitude of AMC's potential liability--$29 million to $290 million--was enormous and out of

---

[13] Defendant misrepresents the Fourth Circuit's holding in Stillmock as "case remanded and district court instructed to consider that 'annihilating results' which are disproportionate to any harm renders class certification inappropriate" (Def. Br. at 25 fn. 93). The Fourth Circuit said no such thing, and the Defendant was actually citing Judge Wilkinson's concurring opinion which with no other judge joined. In Stillmock, the Fourth Circuit held that it was an abuse of discretion to deny a FACTA class on superiority grounds without discussing the other methods for adjudication.

proportion to any harm suffered[.]"  Id. at 710 (citing Bateman v. Am. Multi-Cinema, Inc., 252

F.R.D. 647, 648, 650-51 (C.D. Cal. 2008)).  On appeal, the Ninth Circuit reversed, holding:

> none of these three grounds—the disproportionality between the potential liability
> and the actual harm suffered, the enormity of the potential damages, or AMC's
> good faith compliance—justified the denial of class certification on superiority
> grounds and that the district court abused its discretion in relying on them.

Id. at 710-11.  In so ruling, the court noted that "[w]hile Rule 23 affords district courts "wide

discretion" in deciding whether to certify a class…the district court was obliged to exercise that

discretion in light of the objectives of FACTA."  Id. at 716.  Because the plain language of the

statute allows for statutory damages, and because the statute did not prohibit class actions, the court

held that denying class certification on the ground of disproportionality is inconsistent with

congressional intent.  Id. at 717.  Further, because FACTA allows for actual and punitive damages,

the "statutory damages provision has a compensatory, not punitive purpose."  Id. at 718.

The court distinguished caselaw refusing to certify TILA "technical violation" cases on

superiority grounds.   "Unlike the 'technical' violations alleged in Ratner, Bateman has alleged

'willful' violations of FACTA.  A 'willful' violation is not merely 'technical.'  In order to prevail...,

Bateman must demonstrate either a 'knowing' or 'reckless' violation of the Act."  Id. at 714.

The court also looked at Congressional intent in terms of deterrence, noting:

> Allowing denial of class certification because of the sheer number of
> violations and amount of potential statutory damages would allow the
> largest violators of FACTA to escape the pressure of defending class actions
> and, in all likelihood, to escape liability for most violations. In other words,
> whatever risk of overdeterrence class certification poses, refusing to certify
> a class on these grounds poses the risk of significant underdeterrence.

Id. at 719.  Quoting the Seventh Circuit, the court cautioned "that 'it is not appropriate to use

procedural devices to undermine laws of which a judge disapproves.'"  Id.

Finally, the court even relied upon the Clarification Act to find the Congress intended there

be to extremely large class actions.  The court noted that "at the time the Clarification Act was

enacted in June 2008, other courts had granted certification despite superiority arguments like

AMC's" and yet Congress "did nothing to limit the availability of class relief or the amount of

aggregate damages."  Id. at 720.

The proper time, if at all, for the court to review the size of the award for due process considerations occurs *after* class certification.  See, e.g., Murray, 434 F.2d at 954; Tchoboian at *9. As noted by the Seventh Circuit:

> An award that would be unconstitutionally excessive may be reduced,…but constitutional limits are best applied after a class has been certified.  Then a judge may evaluate the defendant's overall conduct and control its total exposure.  Reducing recoveries by forcing everyone to litigate independently—so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims—has little to recommend it.

Murray, 434 F.3d at 954.

Indeed, Defendant is only able to point to two opinions in which FACTA certification was denied due to due process concerns that were not subsequently abrogated by Bateman.  These cases, clearly in the minority, are also plainly distinguishable on the facts before the Court.  In Leysoto v. Mama Mia I. Inc., 259 F.R.D. 693 (S.D. Fla. 2009), the defendant was a single restaurant with a mere $40,000 in assets, who had only violated FACTA for a couple weeks after the expiration of the Clarification Act's amnesty period.  Further, the defendant provided a class size estimation to the court that the plaintiff did not contest, estimating a statutory damages range of between $4,600,000 and $46,000,000.  Id. at 695.  Given defendant's assets, the most class members could expect to recover was under $1.  Id. at 698-99.  Ehren v. Moon, Inc., No. 09-21222, 2011 WL 345850  (S.D. Fla. Dec. 3, 2010), also involved a small defendant and the plaintiff's efforts to certify a class at the *default judgment phase* (the defendant never answered the complaint).  These two cases are plainly distinguishable, as Rouses has hundreds of millions of dollars in assets (Dkt. No. 86-5 at 44).  See, e.g., Keller at *11 (similarly distinguishing Leysoto and Ehren).

## 2.    FACTA's provision for attorneys' fees does not defeat superiority

Defendant argues that tens of thousands of individual cases against Rouses would be a superior method for adjudicating this matter.  This argument is absurd on its face, and has been rejected by most courts, including the Fourth, Seventh, and Ninth Circuits.  See Pl. Br. at 20-22.

## IV.    CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion for Class Certification should be granted.

15

Dated: January 21, 2014                    Respectfully submitted,

                                           **HERMAN, HERMAN & KATZ, LLP**

                                   By: */s/ Soren E. Gisleson*
                                           Russ M. Herman (La. # 6819)
                                           Stephen J. Herman (La. # 23129)
                                           Soren E. Gisleson (La. # 26302)
                                           820 O'Keefe Avenue
                                           New Orleans, Louisiana 70113
                                           Tel: (504) 581-1892
                                           Fax: (504) 561-6024
                                           rherman@hhkc.com
                                           sherman@hhkc.com
                                           sgisleson@hhkc.com

                                           M. Ryan Casey (La. # 31092)
                                           Brian T. Ku (*pro hac vice*)
                                           **KU & MUSSMAN, P.A.**
                                           12550 Biscayne Blvd., Suite 406
                                           Miami, Florida 33181
                                           Tel: (305) 891-1322
                                           Fax: (305) 891-4512
                                           ryan@kumussman.com

                                           Andrew D. Bizer (La. # 30396)
                                           **BIZER LAW FIRM, LLC**
                                           757 St. Charles Ave., Suite 302
                                           New Orleans, Louisiana 70130
                                           Tel: (504) 619-9999
                                           Fax: (504) 592-3300
                                           andrew@bizerlaw.com

                                           *Attorneys for Plaintiffs and the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 21, 2014, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system which will send notice of electronic filing to all counsel of record in this matter.

                                            */s/ Soren E. Gisleson*
                                           Soren E. Gisleson, Esq.