# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROBERT TICKNOR, et al.,**                               **CIVIL ACTION**
    **Plaintiffs**

**VERSUS**                                                **No. 12-1151**
                                                          **c/w 12-2964**

**ROUSE'S ENTERPRISES, LLC,**                             **SECTION "E"**
    **Defendant**

## ORDER AND REASONS

Before the Court are motions for summary judgment filed by Evanston Insurance Company[1] ("Evanston") and Starr Indemnity & Liability Company[2] ("Starr"). Rouse's Enterprises, LLC ("Rouse's") opposes Evanston's and Starr's motions.[3] Robert Ticknor, Matthew Russell, and Daniel Cutler, on behalf of themselves and others similarly situated (collectively, "plaintiffs"), also filed oppositions to Evanston's and Starr's motions.[4] Evanston filed a reply to the plaintiffs' opposition, and Starr filed replies to the plaintiffs' opposition and Rouse's opposition.[5]

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed suit against Rouse's on May 7, 2012, alleging that in April and May 2012, they each purchased groceries from Rouse's, the operator of a chain of local grocery

---

[1]R. Doc. 70.

[2]R. Doc. 81.

[3]R. Doc. 77, R. Doc. 94.

[4]R. Doc. 76, R. Doc. 93.

[5]R. Doc. 84, R. Doc. 106, R. Doc. 107.

1

stores.[6] Plaintiffs allege they used their personal credit cards for these transactions and that Rouse's failed to truncate the expiration dates when it issued receipts for those transactions.[7] Plaintiffs claim other individuals have had this same experience at Rouse's stores across Louisiana and Mississippi, and thus seek to have this case certified as a class action.[8]

Plaintiffs seek relief under the "Receipt Provision" of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g)(3).[9] Among other things, FACTA prohibits merchants from printing certain credit and debit card information on receipts. In particular, the Receipt Provision provides:

(g) Truncation of credit card and debit card numbers

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g)(1).

FACTA imposes civil liability for violations of the law's provisions, including the Receipt Provision. A negligent violation of the Receipt Provision entitles a plaintiff to recover actual damages suffered as a result of the violation. *Id.* at § 1681o(a)(1). Statutory damages are not available for negligent violations. *Id.* A willful violation of the Receipt

---

[6] R. Doc. 1 at pp. 8-9.

[7] *Id.*

[8] Plaintiffs moved for class certification on December 24, 2013 (R. Doc. 86).

[9] R. Doc. 1 at pp. 12-13.

Provision also entitles a plaintiff to recover actual damages. *Id.* at § 1681n(a)(1)(A). Unlike a negligent violation, however, a willful violation allows a plaintiff to opt for statutory damages, in lieu of actual damages, between $100 and $1,000 per consumer. *Id.* Statutory damages are available even if the plaintiff does not claim to have suffered actual damage as a result of the alleged willful violation. *See, e.g., Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1167-69 (D. Kan. 2008). A willful violation also makes punitive damages, costs, and attorneys' fees available to the plaintiff in addition to actual or statutory damages. 15 U.S.C. § 1681n(a)(2)-(3).[10]

Plaintiffs do not claim to have suffered any actual damage as a result of the alleged violations. Instead, plaintiffs claim the fact that Rouse's "knowingly, willfully, intentionally, and reckless violated and continues to violate" the Receipt Provision entitles them to statutory damages under 15 U.S.C. § 1681n, as well as punitive damages, costs, and attorneys' fees.[11] Finally, plaintiffs seek an order enjoining Rouse's from violating the Receipt Provision and directing Rouse's to comply with the provision going forward.[12]

On December 14, 2012, Evanston filed a separate suit against Rouse's, seeking a declaration that Evanston has no duty to defend Rouse's for the plaintiffs' lawsuit and owes no coverage to Rouse's under the insurance policy between Evanston and Rouse's.[13] Upon

---

[10]The United States Supreme Court in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) interpreted "willful violations" under § 1681n to include any violations in reckless disregard of the provision. As a result, a violation of FACTA in reckless disregard of the law is a willful violation, and a plaintiff in such a case is entitled to seek statutory or actual damages, as well as punitive damages, costs, and attorney's fees.

[11] R. Doc. 1 at p. 13.

[12] *Id.* at p. 14.

[13]12-2964, R. Doc. 1.

determining the Evanston's suit for a declaratory judgment and the plaintiffs' claims against Rouse's were related, the Court consolidated the cases for purposes of discovery on April 5, 2013.[14] After the cases were consolidated, Starr requested and was granted leave to file a complaint in intervention against Rouse's.[15] Starr, as Rouse's excess liability insurer, also seeks a declaration that it owes no duty defend Rouse's and owes no coverage to Rouse's for the claims asserted by the plaintiffs.[16]

Evanston and Starr both filed both motions for summary judgment that the insurance policy Evanston issued to Rouse's provides no coverage for the claims made by the plaintiffs and that neither insurance company owes a duty to defend those claims. The policy Starr issued to Rouse's is an excess liability insurance policy that follows the policy issued by Evanston to Rouse's. Thus, Starr's obligations hinge upon whether Evanston's policy provides coverage.[17]

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d

---

[14]R. Doc. 32.

[15]R. Doc. 41.

[16]R. Doc. 44.

[17] Starr's policy provides: "We will pay on behalf of the Insured, the 'Ultimate Net Loss' in excess of the 'Underlying Insurance' .... the coverage provided by this Policy shall follow the terms, definitions, conditions and exclusions of the applicable First Underlying Insurance Policy(ies)..." R.Doc. 81-2, p. 11 (Starr Policy No. SISCSEL01603011). The "First Underlying Insurance Policy(ies)" includes Evanston's general commercial liability policy. *See* R. Doc. 70-2, p. 7 (Declarations, listing Evanston's Policy No. 3C30306 as a "First Underlying Insurance Policy").

1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)(internal quotations and citations omitted).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence on its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little* 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time

5

for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'")(citing *Celotex*, 477 U.S. at 332).

## LAW AND ANALYSIS

### A. The Policy

The parties disagree over whether coverage is provided under the "personal or advertising injury" portion of the policy, and, if so, whether any exclusions apply. The "personal and advertising injury" portion of the policy relied on by Rouse's and the plaintiffs provides coverage for "[o]ral or written publication, in any manner, of material that violates a person's right to privacy[.]"[18] The Evanston Commercial General Liability Policy, Number 3C30306-0 ("the policy"), issued to Rouse's includes the following relevant provisions:

### Coverage B - Personal and Advertising Injury Liability

#### 1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.
...

#### 2. Exclusions
This insurance does not apply to :
#### a. Knowing Violation of Rights of Another
*"Personal and advertising injury" caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."*

---

[18]R. Doc. 70-2, p. 28.

...

**p. Distribution of Material in Violation of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) *Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.*

...

**Section V - Definitions**

...

**14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:**

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. *Oral or written publication, in any manner, of material that violates a person's right of privacy;*

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."[19]

As stated earlier, as a follow-form policy, Starr's policy adopts the conditions and agreements of the underlying primary liability insurance policy issued by Evanston.[20] Unless there is an express exception to the form of the underlying insurance, the excess carrier (Starr) in a follow-form policy must act according to the underlying insurance

---

[19] *See* R. Doc. 70-1. Emphasis added.

[20] *See, supra* note 17.

7

policy's terms. *See Orleans Parish Sch. Bd. v. Lexington Ins. Co.*, 99 So.3d 723, 727 (La. Ct. App. 2012). None of the parties argues an exception to the underlying policy changes Starr's obligations, thus Starr's obligations under the policy mirror those of Evanston's.

## B. The Parties' Arguments

### I. Insurers' Arguments

Evanston argues its policy does not provide coverage because Rouse's alleged FACTA violations are not "personal or advertising injuries" arising out of "[o]ral or written publication, in any manner, of material that violates a person's right to privacy[.]"[21] Evanston maintains Rouse's alleged FACTA violations, printing expiration dates on receipts, given only to the card holder, do not equal "publication" and publication is required for there to be coverage. Evanston further argues, even if there was publication, Rouse's liability resulting from plaintiffs' FACTA claims are expressly excluded as "personal and advertising injuries" which "arise directly or indirectly out of any act or omission that violates or is alleged to violate: ... [a]ny statute, ordinance or regulation ... that prohibits or limits the sending, transmitting, communicating, or distribution of material or information."[22] Lastly, Evanston maintains Rouse's has no coverage for plaintiffs' FACTA claims because the policy excludes "personal and advertising injuries" that are "caused by or at the direction of the insured with knowledge that the act would violate the rights of another."[23] Evanston asserts the allegations against Rouse's are for its willful violations of FACTA, and thus coverage is excluded.

---

[21] R. Doc. 70-2, p. 28.

[22] R. Doc. 70-2, p. 22.

[23] R. Doc. 70-2, p. 21.

Starr's motion for summary judgment is almost identical to Evanston's motion.[24] In addition to lodging the same arguments as Evanston, Starr also contends it is relieved from providing coverage for claims of which Rouse's was aware during the policy period under the "fortuity doctrine."

### ii. Oppositions

Both plaintiffs and Rouse's filed oppositions to Evanston's and Starr's motions.[25] Plaintiffs and Rouse's argue the alleged FACTA violations, failing to truncate credit card expiration dates, constitute "publication" covered under the policy for "personal and advertising injury." The plaintiffs and Rouse's assert "publication" does not require any dissemination of information to parties other than the credit card holder. Alternatively, the plaintiffs and Rouse's maintain the term "publication" is ambiguous, and should therefore be interpreted against Evanston and in favor of coverage.

With respect to the exclusion for "personal and advertising injuries" which arise out of alleged statutory violations, the plaintiffs and Rouse's argue the exclusion is ambiguous because it effectively excludes coverage for all "oral or written publication," leads to absurd consequences, and should be read in favor of coverage. Regarding the exclusion for "personal and advertising injuries" which arise out of "willful" acts of the insured, plaintiffs and Rouse's point out that a determination has not yet been made regarding whether or not Rouse's conduct was "willful," and, as a result, Evanston and Starr cannot deny coverage on that basis.

---

[24]R. Doc. 81.

[25]R. Doc. 76 (plaintiffs' opposition to Evanston's motion); R. Doc. 77 (Rouse's opposition to Evanston's motion); R. Doc. 93 (plaintiffs' opposition to Starr's motion); R. Doc. 94 (Rouse's opposition to Starr's motion).

Plaintiffs further argue the exclusion in Evanston's policy for statutory violations does not apply because Rouse's alleged FACTA violations do not involve "sending, transmitting, communicating or distribution." Alternatively, plaintiffs assert the exclusion is ambiguous and should be interpreted in favor of coverage.

In addition to the above mentioned arguments, plaintiffs also assert Evanston and Starr's motions for summary judgment are premature, and plaintiffs ask the Court to deny the motions to allow additional discovery.[26]

## C. Governing Law

Louisiana law governs the dispute over the interpretation of Evanston's policy. Although plaintiffs' claims are based on FACTA and federal question jurisdiction, Starr and Evanston's suits for declaratory judgment are based on diversity jurisdiction.[27] A federal court sitting in diversity jurisdiction must apply the substantive law of the forum state, *Eerie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), including its choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). Under Louisiana law, the provisions of an insurance policy are interpreted in accordance with the law of the state in which the policy was delivered. *Thermo Terratech v. GDC Enviro-Solutions, Inc.*, 265 F.3d 329, 334 (5th Cir. 2001). Both

---

[26]The plaintiffs seek information from Evanston relating to the circumstances in which it provides coverage for "personal and advertising injuries" for "oral or written publications, in any manner, that violate a person's right to privacy" under the policy. (*See* R.Doc. 78) Evanston filed a motion for a protective order to prevent the plaintiffs from discovering this information (R.Doc. 71) that is pending before Magistrate Judge Wilkinson.

[27]Evanston is incorporated and has its principal place of business in Illinois. Starr is incorporated in Texas and has its principal place of business in New York. Rouse's is a LLC and both of its members are Louisiana citizens. Thus, under 28 U.S.C. § 1332, this Court has subject matter jurisdiction over Evanston and Starr's claims.

Evanston and Starr's policies were delivered to Rouse's in Louisiana.[28] Thus, Louisiana law will apply to the interpretation of Evanston and Starr's policies issued to Rouse's.

**D. Policy Coverage**

  **i. Applicable Law**

  Under Louisiana law, "an insurance policy is a contract that must be construed in accordance with the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 516 (5th Cir. 2005) (citing *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 262 (5th Cir. 2003)). When interpreting insurance contracts, the Civil Code requires the court to "ascertain the common intent of the parties to the contract." *Coleman*, 418 F.3d at 516 (citing *Mayo v. State Farm Mut. Auto. Ins. Co.*, 869 So.2d 96, 99 (La. 2004). As a contract, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Cadwallader v. Allstate Ins. Co.* 848 So.2d 577, 580 (La. 2003) (internal citations omitted). "An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by the terms or so as to achieve an absurd conclusion." *Carrier v. Reliance Ins. Co.*, 759 So.2d 37, 43 (La. 2000).

  With respect to coverage, an insured bears the burden of proving that the event giving rise to a claim falls within the policy's terms. *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000). However, "the insurer bears the burden of proving the applicability of an exclusionary clause within the policy." *Id.* Exclusionary provisions are to be read with the

---

[28] *See* R. Doc. 70-2, p. 13; R. Doc. 81-2, p. 4.

entire policy, and are construed strictly against the insurer and in favor of coverage. *Coleman*, 418 F.3d at 517 (citing *Garcia v. Saint Bernard Parish Sch. Bd.*, 576 So.2d 975, 976 (La. 1991)). Ambiguities within an exclusionary provision or the policy as a whole must be construed against the insurer and in favor of coverage. *Coleman*, 418 F.3d at 517 (citing La. C.C. art. 2056, stating "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text."). Whether or not a term in an insurance policy is ambiguous is a question of law. *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1994). Any ambiguities in an insurance policy are "resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Coleman*, 418 F.3d at 417 (citing *Breland v. Schilling*, 550 So.2d 609, 610-11 (La. 1989)).  This rule, known as the "reasonable expectations doctrine," requires a court to construe an ambiguous policy "to fulfill the reasonable expectations of the parties in light of the customs and usages of the industry." *Louisiana. Ins. Guar. Ass'n v. Interstate Fire & Casualty Co.*, 630 So.2d 759, 764 (La. 1994).

    With respect to providing a defense, an insurer's duty to defend is broader than its duty to indemnify. *See Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 660 (5th Cir. 2005); *Selective Ins. Co. of S.E. v. J.B. Mouton & Sons, Inc.*, 954 F.2d 1075, 1077 (5th Cir. 1992). "The insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage." *Yount v. Maisano*, 627 So.2d 148, 154 (La. 1993). An insurer's duty to defend depends on "whether any facts pleaded in the complaint possibly fall within matters covered under the insuring clause."

12

*Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009) (citing *Doerr v. Mobil Oil Corp.* 774 So.2d 119, 124 (La. 2000), *modified on other grounds*, 782 So.2d 573 (La. 2001)). The insured bears the burden on this point. *Id.* The court must look only to the *factual* allegations in the complaint, and "statements of conclusions in the complaint that are unsupported by factual allegations will not trigger a duty to defend." *Jensen v. Snellings*, 841 F.2d 600, 612 (5th Cir. 1988) (citing *Guidry v. Zeringue*, 379 So. 2d 813, 816 (La. Ct. App. 1980)). "The duty to defend is determined solely from the plaintiff's pleadings and the face of the policy without consideration of extraneous evidence." *Exposition Dist. v. BFS Diversified Prods., LLC*, 49 So.3d 49, 51 (La. App. 2010). Furthermore, "allegations in the complaint are liberally interpreted to determine whether they establish the insurer's duty to defend." *Jensen*, 841 F.2d at 612.

If the complaint alleges a potentially covered event triggering an insurer's duty to defend under the policy, the insurer then has the burden of proving that the complaint states only facts that fall within an exclusion from coverage. *Doerr,* 774 So.2d at 124; *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyds*, 616 So.2d 1250, 1253 (La. 1993). To prevail, the insurer must show the allegations in the complaint unambiguously fall within one of the exclusionary clauses. *Alert Centre, Inc. v. Alarm Protection Servs., Inc.*, 967 F.2d 161, 163 (5th Cir. 1992).

### ii. FACTA Receipt Provision Violations as "Publication"

The "personal and advertising injury" portion of the policy relied on by Rouse's and the plaintiffs provides coverage for "[o]ral or written publication, in any manner, of material that violates a person's right to privacy[.]"[29] The parties disagree over whether

---

[29] R. Doc. 70-2, p. 28.

Rouse's alleged FACTA Receipt Provision violations constitute "publication" under Evanston's policy. Although "publication" is not a defined term in the policy, Evanston and Starr rely on an unpublished Eleventh Circuit decision, *Creative Hospitality Ventures, Inc. v. United States Liability Ins. Co.*, 444 Fed. Appx. 370 (11th Cir. 2011), and a decision by the Western District of Pennsylvania, *Whole Enchilada, Inc. v. Travelers Property Cas. Co. of Am.*, 581 F. Supp. 2d 677 (W.D. Pa. 2008), in support of their motions. Both cases held alleged FACTA violations did not constitute "publication" and were not covered by the insurer's general commercial liability policy.

In *Creative Hospitality*, the insurer's policy contained a policy provision for "personal and advertising injury" identical to Evanston's provision.[30] The Eleventh Circuit concluded a merchant providing a receipt to a customer during a retail transaction in violation of FACTA did not constitute "publication." *Creative Hospitality* pointed to another Eleventh Circuit decision in which the Eleventh Circuit issued a certified question to the Florida Supreme Court for it to define the term "publication." *See Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1312 (11th Cir. 2008). The Florida Supreme Court, citing Webster's Third International Dictionary, defined the term "publication" as "communication (as of news or information) to the public: public announcement" or "the act or process of issuing copies (as a book, photograph, or musical score) for the general distribution to the public." *Id.* at 1005-6 (quoting Webster's Third New International Dictionary 1836 (1981)). Adhering to the Florida Supreme Court's definition of "publication" in *Penzer*, the Eleventh Circuit in *Creative Hospitality* found the alleged FACTA violations were not covered by the

---

[30]The policy in *Creative Hospitality* defined "personal and advertising injury" as: "oral or written publication, in any manner, of material that violates a person's right of privacy..." 444 Fed. Appx. 370, 371 (11th Cir. 2008)

insurer's policy. The Eleventh Circuit determined the receipt provided was a "contemporaneous record of a private transaction" and the merchant "neither broadcasted nor disseminated the receipt or the credit card information to the general public." *Creative Hospitality*, 444 Fed. Appx. at 376. Evanston and Starr urge this Court to adopt the definition of "publication" provided by the Florida Supreme Court and adopted by the Eleventh Circuit in *Creative Hospitality*.

Evanston and Starr also point to *Whole Enchilada*, in which the Western District of Pennsylvania interpreted a policy providing coverage for "personal and advertising injury" defined as including injuries "arising out of ... oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life." 581 F. Supp. 2d at 693.[31] The Western District of Pennsylvania also looked to the dictionary to define "publication," and drew from the definition of "publish": "1. a. to make generally known; b. to make public announcement of; 2. a. to disseminate to the public; b. to produce or release for distribution." *Id.* at 697 (citing Merriam-Webster Dictionary, Online Ed. (2008). The court also pointed to the Black's Law Dictionary definition of "publication": "1. Generally, the act of declaring or announcing to the public." *Id.* (citing Black's Law Dictionary, 8th Ed. at 1261 (2004)). Reading these two definitions, the *Whole Enchilada* court found the defendant's alleged FACTA violations did not constitute "publication." The plaintiffs' complaint in *Whole Enchilada* alleged only that information was printed on a receipt and handed to the customer at the point of sale. *Id.* The court noted that a receipt is merely a "record of a point

---

[31]Both the plaintiffs and Rouse's point out that the policy provision in *Whole Enchilda* is distinguishable from the provision in Evanston's policy. The Court acknowledges the differences, however, *Whole Enchilada*'s discussion of the term "publication" is helpful.

of sale transaction" that is "provided to the customer." *Id.* The complaint did not allege the merchant made the plaintiffs' information generally known, announced publicly, disseminated to the public, or released for distribution. *Id.* The court also declined to read "publication" broadly as to include "production or releas[ing] for distribution." *Id.* Accordingly, the court found there was no publication and no coverage for plaintiffs' FACTA claims under the policy. *Id.*

Plaintiffs and Rouse's both encourage this Court to adopt a broader definition of "publication." They argue "publication" is also defined as "to produce or release for publication; specifically: print" and does not require publication to a third party.[32] Plaintiffs and Rouse's assert the mere fact that the alleged FACTA violations involve printing brings the conduct within this definition of "publication." The cases cited by the plaintiffs and Rouse's involve coverage for violations of the Telephone Consumer Protection Act (TCPA) by "blast faxing."[33]   The TCPA prohibits the "use [of] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 27 U.S.C. §227(b)(1)(C). Blast faxing is the practice of faxing unsolicited advertisements to recipients without their consent and is prohibited by the TCPA. *Park Univ. Enterp., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1242 (10th Cir. 2006).

The purpose of the TCPA is to protect the privacy of individuals from receiving

---

[32]*See, e.g., Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 157 Fed. Appx. 201, 207 (11th Cir. 2005)

[33]*See W. Rim Inv. Advisors Inc. v. Gulf Ins.* Co., 96 Fed. Appx. 960 (5th Cir. 2005)(unpub.), *aff'g W. Rim Inv. Advisors Inc. v. Gulf Ins. Co.*, 269 F. Supp. 2d 836, 847 (N.D. Tex. 2003); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876 (8th Cir. 2005); *Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 157 Fed. Appx. 201 (11th Cir. 2005); *Park University Enterprises, Inc. v. American Cas. Co.*, 442 F.3d 1239 (10th Cir. 2006);  *Zurich Am. Ins. Co. v. Fieldstone Mort. Co.*, 2007 WL 3268460 (D. Md. Oct. 26, 2007).

unsolicited faxed advertisements. *See, e.g., Park University Enterprises, Inc. v. American Cas. Co.* 442 F.3d at 1249. As a result, no publication to a third party is necessary for the right of privacy to be violated. *W. Rim Inv. Advisors, Inc.*, 269 F. Supp. 2d at 864-47 (finding an intrusion upon seclusion can violate an individual's right to privacy, and thus a privacy violation does not necessarily require a publication to a third party). The cases cited by the plaintiffs and Rouse's held that sending unsolicited faxed advertisements constitutes "publication" because the advertisements were disseminated to the public and "made generally known" in violation of the recipients' privacy right to be left alone. *See, e.g., Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 157 Fed. Appx. at 207.[34]

Unlike blast faxing, the transactions giving rise to the plaintiffs' FACTA claims do not involve mass distribution of material to the general public or an intrusion into an individuals' right to be left alone. The transactions at issue were initiated by the plaintiffs, the receipts were provided only to the customer, and the receipts contained information the plaintiffs already possessed. The plaintiffs' right to be left alone was not intruded upon by Rouse's alleged FACTA violations.[35] The court in *Creative Hospitality* explained the difference between blast faxing under the TCPA and FACTA violations :

> [the insured] allegedly violated FACTA by issuing a credit card receipt to a
> costumer that contained more than five digits of the consumer's credit card
> number or the card's expiration date. The receipt is a contemporaneous

---

[34] To the contrary, the Seventh and Fourth Circuits have held violations of the TCPA do not fall within an insurer's policy covering "publication" that "violates a person's right to privacy" because TCPA violations do not involve divulging or sharing of private information to third parties. Those courts recognized an individuals' privacy right to be left alone, but declined to extend the definition of "publication" to circumstances in which information was not shared with a third party. *See Resource Bankshares Corp. v. St. Paul Mercury Ins. Corp.*, 407 F.3d 631, 640-41 (4th Cir. 2005); *Am. States Ins. Co. v. Capital Assocs. of Jackson County, Inc.*, 392 F.3d 939, 942-43 (7th Cir. 2004).

[35] The Court notes that FACTA was enacted to prevent intrusions into consumers' privacy and identity theft. However, the plaintiffs do not claim their identity was stolen as a result of Rouse's alleged FACTA violations.

> record of a private transaction between [the insured] and the customer, and [the insured] neither broadcasted nor disseminated the receipt or the credit card information to the general public. Indeed, [the insured] provided the receipt only to the customer (who already knows the credit card number and its expiration date). Additionally, unlike the unsolicited "blast-faxes" at issue in [a TCPA case], the aggrieved customer initiated the transaction by paying for his meal with a credit card. In sum, providing a customer a contemporaneous record of a retail transaction involves no dissemination of information to the general public and does not constitute publication within the meaning of [the insurer's] policy.

*Creative Hospitality*, 444 Fed. Appx. at 376. The broad definition of "publication" used by some courts in the context of TCPA violations is not applicable in this case.

Plaintiffs and Rouse's alternatively maintain the term "publication" is ambiguous and, as a result, the Court is required to interpret the policy against the insurers and in favor of coverage. Courts utilize a "strict construction rule" in Louisiana and a policy is construed against the insurer and in favor of coverage only when an "ambiguous policy provision is susceptible to two or more *reasonable* interpretations." *Cadwallader*, 848 So.2d at 580 (emphasis added). For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. *Id.* Whether or not a term in an insurance policy is ambiguous is a question of law. *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d at 764.

An insurer's failure to define a term in a policy does not automatically render it ambiguous. *Sumner v. Mathes*, 52 So.3d 931, 935 (La. Ct. App. 2010). "The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists." *Mayo v. State Farm Mut. Auto. Ins. Co.*, 869 So.2d 96, 99-100 (La. 2004)(citing *Cadwallader*, 848 So.2d at 580). The Court finds that the term "publication" as used in the Evanston policy is not ambiguous. Instead, it is used

in its ordinary, plain meaning and has only one reasonable interpretation.[36]

Although the decisions in *Whole Enchilada* and *Creative Hospitality* are not binding on this Court, they are instructive. Both courts examined the exact issue presented by Evanston's and Starr's motions - whether alleged FACTA violations involving receipts provided only to the card holders amount to "publication." Furthermore, although the policy discussed in *Whole Enchilada* had a slightly different provision regarding "violation of a person's right to privacy,"[37] the Court finds the Western District of Pennsylvania's holding, which focused on the definition of "publication," persuasive.

The parties do not cite, and the Court cannot find, any other cases discussing coverage of similar FACTA violations under similar policy provisions. Plaintiffs and Rouse's do not point to any cases which contradict *Whole Enchilada* and *Creative Hospitality*. Nor do they point to any Louisiana decisions defining or interpreting the word "publication" for insurance coverage purposes.

The Louisiana Supreme Court instructs courts to give words their plain, ordinary, and generally prevailing meaning. *See Cadwallader*, 848 So.2d at 58. The plain and generally accepted meaning of the term "publication" is found under the dictionary definition of "publish": "1. a.: to make generally known b.: to make public announcement of; 2. a.: to disseminate to the public b.: to produce or release for distribution." Merriam

---

[36]Although the decisions in *Whole Enchilada* and *Creative Hospitality* are not binding on this Court, the fact that neither of these courts found the term "publication" ambiguous is also persuasive. *See Whole Enchilada*, 581 F. Supp. 2d at 668; *Creative Hospitality*, 444 Fed. Appx. at 376.

[37]Evanston's policy covers "personal and advertising injury arising from "oral or written publication, in any manner, of material that violates a person's right to privacy." The policy at issue in *Whole Enchilada* covered "personal and advertising injury" arising out of "oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life."

Webster Dictionary, Online Ed. (2014)(last visited January 22, 2014). Black's Law Dictionary defines "publication" as "[g]enerally, the act of declaring or announcing to the public." Black's Law Dictionary, 9th Ed. (2009). Accordingly, this Court holds that for there to be "publication" under the "personal and advertising" provision of the Evanston insurance policy, the material must be made generally known, announced publicly, disseminated to the public, or released for distribution. Only the plaintiffs and the putative class members were provided receipts and only for their own personal transactions.[38] Rouse's alleged FACTA violations do not constitute "publication" under the plain meaning of that term adopted herein.

Because the Court has determined the term "publication" as used in the Evanston policy is unambiguous and does not provide coverage unless there is publication to a third party, Rouse's alleged FACTA violations are not covered by the "personal or advertising injury" provision in Evanston's policy. As there is no coverage, there is no duty to defend and the Court need not reach whether any exclusion applies.

**E. Additional Discovery**

In their oppositions, plaintiffs suggest a ruling on Evanston's and Starr's motions would be premature because plaintiffs need additional time to conduct more discovery. Under Federal Rule of Civil Procedure 56(d),[39] a non-movant on summary judgment may request a continuance for further discovery. In order to obtain a Rule 56(d) continuance, the non-movant must "show[] by affidavit or declaration that, for specified reasons, it

---

[38]R. Doc. 1, pp. 9, 12.

[39]Rule 56 was amended in 2010, and subsection 56(d) carries forward without substantial change the provisions of former subsection 56(f).

cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).[40]   However, Rule 56(d) "may not be invoked by the mere assertion that discovery is incomplete; the opposing party must demonstrate how the [requested discovery] will enable him to rebut the movant's allegations of no genuine issue of material fact." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1396 (5th Cir. 1994)(citation and internal quotation marks omitted). "[A] plaintiff's entitlement to discovery prior to ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).

Plaintiffs have not shown how the requested discovery will enable them to defeat the summary judgment motions. Plaintiffs' counsel attached a declaration stating that plaintiffs' discovery requests "bear on the central issue" of coverage.[41]   However, plaintiffs cannot rely on "vague assertions that discovery will produce needed, but unspecified, facts" to obtain a Rule 56(d) continuance. *Green v. CCS Energy Services, LLC* 2008 WL 5157505, at *6 (citing *Washington v. Allstate Ins. Co.*, 901 F.2d at 1285). Furthermore, the discovery plaintiffs seek concerns circumstances in which Evanston excludes coverage under the

---

[40]Although plaintiffs did not submit a separate motion for a continuance under Rule 56(d), it is settled that because of the "precautionary nature of the rule ... technical, rigid scrutiny of a Rule 56(d) motion is inappropriate." *Union City Barge Line v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1987). A Rule 56(d) continuance may be justified if the nonmovant identifies the need for a continuance in a brief and not in an affidavit. *See Arters v. Univision Radio Broad. TX, L.P.*, 2009 WL 1313285, at *8 n. 19 (N.D. Tex. May 12, 2009). Therefore, Evanston's and Starr's argument that plaintiffs' 56(d) request should be denied because it was not brought by separate motion is not persuasive. The Court notes that the language of Rule 56(d) does not require a separate motion and plaintiffs attached an affidavit complying with the procedural requirements of the Rule.

[41]R. Doc. 93-2.

"personal and advertising injury" provision of its policy.[42] At most, the information plaintiffs seek may be relevant to its argument surrounding whether an exclusion in the policy applies. Because the Court found Evanston's policy does not provide coverage for Rouse's alleged FACTA violations and was not required to reach whether any exclusions apply, any discovery relating to exclusions would be wholly irrelevant.

CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Evanston's motion for summary judgment be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that Starr's motion for summary judgment be and hereby is **GRANTED**.

**New Orleans, Louisiana, this 20th day of February, 2014.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[42] *See* R. Doc. 71. Evanston filed a motion for a protective order to prevent the plaintiffs from discovering such information.