## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROBERT TICKNOR, et al.,**　　　　　　　　　　**CIVIL ACTION**
　　**Plaintiffs**

**VERSUS**　　　　　　　　　　　　　　　　　**No. 12-1151**
　　　　　　　　　　　　　　　　　　　　　　**c/w 12-2964**

**ROUSE'S ENTERPRISES, LLC,**　　　　　　　**SECTION "E"**
　　**Defendant**

### ORDER AND REASONS

Before the Court is a Motion to Certify Class filed by plaintiffs Daniel Cutler, Matthew Russell, and Robert Ticknor ("Plaintiffs").[1] Defendant, Rouse's Enterprises, LLC ("Rouse's") opposes Plaintiffs' motion.[2] Plaintiffs filed a reply to Rouse's opposition.[3] After a February 7, 2014 hearing on Plaintiffs' Motion to Certify Class, both parties filed supplemental briefing.[4] For the reasons that follow, it is ordered that the Motion to Certify Class is **DENIED**.

### BACKGROUND

**A. The Class Representatives' Claims**

Plaintiffs filed suit against Rouse's on May 7, 2012, alleging that in April and May 2012, they each purchased groceries from Rouse's, the operator of a chain of local grocery stores.[5] Plaintiffs allege they used their personal credit cards for these transactions and that

---

[1] R. Doc. 86.

[2] R. Doc. 114.

[3] R. Doc. 121.

[4] R. Doc. 132; R. Doc. 133; R. Doc. 147; R. Doc. 148.

[5] R. Doc. 1 at pp. 8-9.

Rouse's failed to truncate the cards' expiration dates when issuing receipts for those transactions.[6]

In 2003, Congress amended the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, by enacting the Fair and Accurate Transaction Act ("FACTA"). FACTA added certain provisions to FCRA and amended others. *See* Pub. L. No. 108-159, 117 Stat. 1952 (2003). Plaintiffs seek relief under the "Receipt Provision" of FACTA, 15 U.S.C. § 1681c(g)(3).[7] The Receipt Provision provides:

(g) Truncation of credit card and debit card numbers

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g)(1).

FACTA imposes civil liability for violations of the law's provisions, including the Receipt Provision. A negligent violation of the Receipt Provision entitles a plaintiff to recover actual damages suffered as a result of the violation. *Id.* at § 1681o(a)(1). A willful violation of the Receipt Provision entitles a plaintiff to recover actual damages or opt for statutory damages, in lieu of actual damages, of between $100 and $1,000 per consumer. *Id.* at § 1681n(a)(1)(A). Statutory damages are recoverable even if the plaintiff does not claim to have suffered actual damage as a result of a willful violation. *See, e.g., Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1167-69 (D. Kan. 2008). Punitive damages,

---

[6] *Id.*

[7] *Id.* at pp. 12-13.

2

costs, and attorneys' fees also are available to the plaintiff if there has been a willful violation. 15 U.S.C. § 1681n(a)(2)-(3).[8]

The right to sue for a violation of FACTA's Receipt Provision is provided in 15 U.S.C. § 1681n, which provides, "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any *consumer* is liable to that *consumer*..." 15 U.S.C. § 1681n(a) (emphasis added). Under FACTA, "the term consumer means an individual." 15 U.S.C. § 1681a(c). It is clear that only individual consumers, and not business customers, may obtain relief for violations of FACTA. *See Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 156 (S.D.N.Y. 2010)("[A]ny right to sue under [FACTA] is limited to 'consumers.'"); *see also Rowden v. Pacific Parking Systems, Inc.*, 282 F.R.D. 581, 585 (C.D. Cal. July 2012).

In addition, the "consumer" also must be the "cardholder" to recover under FACTA as the Receipt Provision prohibits merchants from printing "more than the last 5 digits of the card number or the expiration date upon any receipt *provided to the cardholder* at the point of sale or transaction." 15 § 1681c(g)(1) (emphasis added). The term "cardholder" is not defined under FACTA. *See* 15 U.S.C. § 1681a. Rouse's urges this Court to adopt the definition of "cardholder" provided for in the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602(m).[9] The definition of cardholder in TILA expressly states "[t]he definitions ... set

---

[8]The United States Supreme Court in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) interpreted "willful violations" under § 1681n to include any violations in reckless disregard of the provision. As a result, a violation of FACTA in reckless disregard of the law is a willful violation, and a plaintiff in such a case is entitled to seek statutory or actual damages, as well as punitive damages, costs, and attorney's fees.

[9]Under TILA, a "cardholder" is "any person to whom a credit card is issued or any person who has agreed with the card issuer to pay obligations arising from the issuance of a credit card to another person." 15 U.S.C. § 1602(m).

forth in this section are applicable for purposes of this subchapter," *i.e.* 15 U.S.C. §§1601-1667. It is unclear whether the definition of "cardholder"under TILA also applies to FACTA.[10]  Regardless of the exact definition of the term, for purposes of this motion it is sufficient to note the Receipt Provision requires the offending receipt be provided to the "cardholder."

Plaintiffs do not claim to have suffered any actual damage as a result of the alleged violations.  Instead, plaintiffs claim the fact that Rouse's "knowingly, willfully, intentionally, and reckless violated and continues to violate" the Receipt Provision entitles them to statutory damages under 15 U.S.C. § 1681n, as well as punitive damages, costs, and attorneys' fees.[11]  Finally, plaintiffs seek an order enjoining Rouse's from violating the Receipt Provision and directing Rouse's to comply with the provision going forward.[12]

A hearing was held on February 7, 2014 during which the parties presented evidence for and against class certification. At the conclusion of the hearing, the Court ordered each party to submit a supplemental memorandum to the Court addressing how the case would be tried if the Motion to Certify Class were granted. The Court now considers Plaintiffs' Motion to Certify Class.

## B. The Proposed Class

Plaintiffs seek to represent other individuals who have had the same experience at

---

[10]Some district courts have adopted TILA's definition of "cardholder" in FACTA cases. *See Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 259 F.R.D. 151, 160 (N.D. Ill. 2009); *Pezl v. Amore Mio, Inc.*, 259 F.R.D. 344, 348 n. 7 (N.D. Ill. 2009). However, others have declined to adopt this definition. *See Aeschbacher v. California Pizza Kitchen, Inc.*, 2007 WL 1500853 (C.D. Cal. April 3, 2007).

[11] R. Doc. 1 at p. 13.

[12] *Id.* at p. 14.

Rouse's stores across Louisiana and Mississippi by certifying this case as a class action.[13]
Plaintiffs define the putative class as follows:

> All persons who made in-store purchases from the Defendant using a debit
> or credit card, in a transaction from May 8, 2010, through May 10, 2012, at
> one of the following Rouse's stores: Nos. 24-41 and 44-47 ("Non-Compliant
> Stores").

> Plaintiffs specifically exclude from the class: (1) all federal court judges who preside
> over this case and their spouses; (b) all persons who elect to exclude themselves from the
> Class; (3) all commercial entities; (4) all persons who have previously executed and
> delivered to Rouse's releases for all of their Class claims; and (5) Rouse's employees,
> officers, directors, agents, and representatives as well as their family members.[14]

## LAW

### A. Burden of Proof

The party seeking to certify a class bears the burden of demonstrating the case is
appropriate for class treatment. *Berger v. Compaq Computer Corp.* 257 F.3d 475, 479, n.
4 (5th Cir. 2001); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct 2541, 2551, 180 L.Ed.2d
374 (2011)("Rule 23 does not set forth a mere pleading standard. A party seeking class
certification must affirmatively demonstrate his compliance with the Rule - that is, he must
be prepared to prove that there are in fact sufficiently numerous parties, common questions
of law or fact, etc."). Class certification is within the district court's discretion, and the
decision is essentially a factual inquiry. *Vizena v. Union Pac. R.R. Co.* 360 F.3d 496, 502-03
(5th Cir. 2004). The class certification decision should not reach the merits of plaintiffs'

---

[13]R. Doc. 86.

[14]*Id.* at pp. 11-12.

claims. *Castano v. Am. Tobacco Co.* 84 F.3d 734, 744 (5th Cir. 1996). However, it may be necessary for a district court to look beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in order to make a meaningful certification decision. *Id.* The district court must "conduct a rigorous analysis" under Rule 23 before certifying a class and must make specific findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23. *Id.* at 740.

**B. Rule 23**

In order to certify a class, the court must first consider whether the prerequisites of Rule 23(a) have been met. If all four prerequisites of Rule 23(a) are satisfied, a district court may permit the action to be maintained as a class so long as the action falls within any one or more of the three categories established by Rule 23(b). Plaintiffs seek to certify a class under Rule 23(b)(3).[15]  Rule 23 provides in pertinent part:

> **(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all parties is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition...

---

[15]Although Plaintiffs pray for injunctive and declaratory relief in their complaint (*see* R. Doc. 1, p. 14), Plaintiffs do not seek to certify the class under Rule 12(b)(2), which provides: "[a] class action may be maintained if Rule 23(a) is satisfied and if ... (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). After the filing of Plaintiffs' lawsuit, Rouse's changed its point of sale systems at the non-compliant stores to prevent printing expiration dates on receipts. *See* R. Doc. 137 (Deposition of Rouse's Enterprises, LLC, pp. 42-44).  Rule 12(b)(2) certification is improper when the class does not face future harm. *See Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 978 (5th Cir. 2000). Accordingly, the Court need not determine whether class certification is appropriate under Rule 12(b)(2).

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in management of a class action.

Thus, when read together, Rule 23(a) and 23(b)(3) provide six requirements for a group of claims to be certified as a class action: numerosity, commonality, typicality, adequacy, predominance, and superiority. *Turner v. Murphy Oil USA, Inc.* 234 F.R.D. 597, 603 (E.D. La. 2006). The Court will address each requirement in turn.

## ANALYSIS

### A. Rule 23(a) Prerequisites

### 1. Numerosity

To certify a class, Rule 23(a)(1) requires a plaintiff to show "the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). "To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through some evidence or reasonable estimate of the number of purported class members." *Turner*, 234 F.R.D. at 604. "Although the number of members of any proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has generally set the threshold of 100 to 150 people as satisfying the numerosity requirement. *Mullen v. Treasure Chest Casino*, 186 F.3d 620, 624 (5th Cir. 1999). Plaintiffs argue numerosity is met because Rouse's allegedly printed over 14 million receipts that violated the FACTA Receipt Provision during the class period. The number of putative class members very likely is less than 14 million

because claims under the Receipt Provision are made on a per consumer basis and not on a per receipt basis.[16] Regardless, Rouse's does not contest the issue of numerosity. The Court finds Plaintiffs have met their burden of showing numerosity as the individuals included in the proposed class are so numerous that joinder is impractical.

### 2. Commonality

Rule 23(a)(2) requires there be issues of law or fact common to the class. The commonality requirement is satisfied if the class members' claims depend on a common issue of law or fact whose resolution will "resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke." *M.D. ex rel Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012)(citing *Wal-Mart*, 131 S.Ct. at 2557).

As Plaintiffs point out, common legal issues exist with respect to Rouse's liability - whether Rouse's violated FACTA and whether those alleged violations were willful. Rouse's printed identical receipts at all of its Non-Compliant Stores because its point-of-sale systems were controlled centrally and Rouse's stores use identical software and hardware for the printing of receipts.[17] Whether Rouse's practice of printing expiration dates on receipts violated FACTA is an issue that may be resolved uniformly as to all class members. The issue of Rouse's willfulness also may be resolved as to the entire class because that issue does not require the resolution of individualized inquiries unique to each class member.

The commonality requirement demands that the claims of every class member "depend on a common contention ... of such a nature that is capable of class-wide

---

[16]Statutory damages under FACTA are to be awarded on a per consumer basis. *Stillmock v. Weis Markets, Inc.*, 385 Fed. Appx. 267, 272 (4th Cir. 2010).

[17]R. Doc. 86-9, p. 10 (Exhibit 5 to Plaintiff's Motion to Certify Class).

resolution." *Id.* (citations omitted). The claims of the proposed class depend upon the common contention that Rouse's had a regular business practice of providing receipts containing the credit or debit card's expiration date in violation of FACTA. Although the issue has not been extensively examined in this circuit, courts in other circuits "have routinely found that FACTA cases meet the commonality requirement." *Rogers v. Khatra Petro, Inc.*, 2010 WL 3894100, *4 (N.D. Ind. Sept. 29, 2010); *see also Stillmock,* 385 Fed. Appx. 267 ("While there may be some issues not common to all putative class members, for example whether a particular claimant was a 'consumer' under the statute, there is no doubt that there are questions of law and fact pertinent to liability to all members of the proposed class.")(internal citations omitted). The determination of Rouse's liability is central to the validity of each class members' claim and can be resolved in "one stroke." *M.D. ex rel Stukenberg*, 675 F.3d at 840 (citations omitted). The Court finds Plaintiffs have met their burden of showing issues of law or fact common to the class. The more stringent requirement of predominance under Rule 23(b) will be addressed separately, *infra.*

### 3. Typicality

Typicality is a requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test for typicality, like the test for commonality, is not demanding [and] focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Lightbourn v. City of El Paso* 118 F.3d 421, 426 (5th Cir. 1997)(citations omitted). "The critical inquiry is whether the class representative's claims have the same essential characteristics of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual

differences will not defeat typicality." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001). It is Plaintiffs' burden to show the claims or defenses applicable to the class representatives are typical of the class representatives. *Berger*, 257 F.3d at 479, n. 4.

Rouse's argues only that plaintiff Daniel Cutler does not satisfy the typicality requirement. Rouse's asserts Cutler was not a "cardholder" as required by the statute because he used his mother's credit card to purchase groceries.[18] Thus, Rouse's argues that it has a "unique defense" to Cutler's claims that is not typical of the class as a whole. The Court need not reach this issue. Rule 23 allows "one or more members of a class" to sue as representative parties. Thus, even if Cutler is subject to a unique defense that is not typical of the class as a whole, the claims of Russell and Ticknor are typical of the claims and defenses of the putative class and they are sufficient to satisfy the typicality requirement even if Cutler is disqualified as a class representative.[19]

### 4. Adequacy

The final Rule 23(a) prerequisite is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In evaluating

---

[18]Rouse's bases this argument on the definition of "cardholder" under TILA, which defines a "cardholder" as "any person to whom a credit card is issued or any person who has agreed with the card issuer to pay obligations arising from the issuance of a credit card to another person." *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 259 F.R.D. 151, 160 (quoting 15 U.S.C. § 1602(m)).

[19]The Court also notes that this defense may not be necessarily "unique" to Cutler. A defense will not defeat typicality if it applies to all members of the proposed class. *See Ewart v. eBay, Inc.*, 2010 WL 4269259 (N.D. Cal. 2010). In its supplemental memorandum, Rouse's specifically argues it seeks to challenge each putative class members' status as a "cardholder." Thus, the defense applicable to Cutler may be applicable to the entire class. The Court also declines to evaluate the merits of Rouse's defense or determine whether or not Cutler is a "cardholder" entitled to recover under FACTA. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met." *Eisen v. Carlisle Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153 (1973); *see also Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983). Furthermore, because the Court must not delve into the merits, the Court makes no determination regarding the definition of "cardholder" under FACTA.

adequacy, a district court should determine whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have any interests antagonistic to the unnamed class members. *Mullen*, 186 F.3d at 626 (citing *Jenkins v. Raymark Indus. Inc.* 782 F.2d 468, 472 (5th Cir. 1986)). The Fifth Circuit has determined that "the adequacy requirement mandates an inquiry into (1) the zeal and competence of the representatives' counsel and (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Berger*, 257 F.3d at 479 (internal citations omitted). Overall, the adequacy requirement ensures the named plaintiffs at all times adequately represent the interests of the absent class members. *Id.* at 480. Accordingly, courts are wary of relationships between representative plaintiffs and their counsel because "courts fear that a class representative who is closely associated with the class attorney would allow settlement on terms less favorable to the interests of absent class members." *Susman v. Lincoln American Corp.*, 561 F.2d 86, 91 (7th Cir. 1977).

Rouse's points to various relationships between Plaintiffs and their counsel outside of counsel's representation in this matter to argue that Plaintiffs and their counsel are inadequate.[20] Generally, courts refuse to permit class attorneys, their relatives, or business associates from acting as a class representative. *Id.* at 90. (citing *Seiden v. Nicholson*, 69 F.R.D. 681 (N.D. Ill. 1976)*; Stull v. Pool*, 63 F.R.D. 702 (S.D.N.Y. 1974); *Turoff v. May Co.*, 531 F.2d 1357 (6th Cir. 1976)). Further, the  Fifth Circuit declines to allow a named plaintiff's partner or spouse to serve as counsel for a class. *See Phillips v. Joint Legislative*

---

[20]For example, Rouse's contends plaintiff Matthew Russell is friends with plaintiffs' counsel Andrew Bizer.

*Committee on Performance & Expenditure Review*, 637 F.2d 1014, 1023 (5th Cir. 1981)(citing *Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102 (5th Cir. 1978)).

The Court finds the relationship between Plaintiffs and their counsel is not sufficiently close to render the Plaintiffs inadequate class representatives. Although Plaintiffs' counsel have had interaction with the Plaintiffs outside their representation in this matter, the Court does not find that the relationship would cause the class attorneys to agree to a settlement on terms less favorable to the absent class members or otherwise impede the absent class members' interests.

Rouse's also asserts Plaintiffs' lack of knowledge at their depositions regarding certain details of the case demonstrates their inadequacy.[21] Indeed, to meet the adequacy requirement, the Court must be satisfied that the class representatives, and not their counsel, are directing the litigation. *Unger v. Amedisys* 401 F.3d 316, 321 (5th Cir. 2005). As a result, plaintiffs must also show they are "sufficiently informed about the litigation to manage the litigation effort." *Id.*

At their depositions, each of the representative Plaintiffs demonstrated an understanding of their claims, the remedy available, the status of the case, the motions already decided in the case and their outcome, as well as the other depositions which had taken place.[22] Plaintiffs also testified about their responsibilities as class representatives and meetings with their attorneys.[23] Thus, Plaintiffs have demonstrated they are sufficiently

---

[21]For example, plaintiff Matthew Russell testified that he read the complaint for the first time the weekend before his deposition. *See* R. Doc. 142, pp. 23-25 (Deposition of Matthew Russell).

[22]*See* R. Doc. 140, pp. 28-36 (Deposition of Robert Ticknor); R. Doc. 141, pp. 30-33 (Deposition of Daniel Cutler); R. Doc. 142, pp. 26-32 (Deposition of Matthew Russell).

[23]*See* R. Doc. 140, p. 61 (Deposition of Robert Ticknor); R. Doc. 141, p. 34 (Deposition of Daniel Cutler); R. Doc. 142, pp. 52-54 (Deposition of Matthew Russell).

informed about their case to manage the litigation effort. Further, Rouse's has not shown Plaintiffs have any interests antagonistic to those of the class representatives, nor has Rouse's shown Plaintiffs' counsel lacks the competence or zeal to litigate the case. Accordingly, the Court finds Plaintiffs have met the adequacy requirement of Rule 23(a).

## B. Rule 23(b)(3) Requirements

To certify a class under Rule 23(b)(3), the class representatives must show "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) includes both a "predominance" and "superiority" requirement. If the purported class lacks either requirement, class certification must be denied.

### 1. Predominance

The predominance inquiry evaluates whether questions of law or fact common to the members of the class "predominate over any questions affecting only individual members." *Unger*, 401 F.3d at 320 (quoting *Berger*, 257 F.3d at 479-80). The cause of action as a whole must satisfy Rule 23(b)'s predominance requirement. *Castano* 84 F.3d at 745 n. 21. Although similar to commonality, predominance is "far more demanding" because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Unger*, 401 F.3d at 320. In determining whether questions of law or fact common to the members of the class predominate, the Court must consider "how a trial on the merits would be conducted if a class were certified." *Bell Atl. Corp. v. AT&T Corp.* 339 F.3d 294, 302 (5th Cir. 2003)(citing *Sandwich Chef of Texas, Inc. v. Nat'l Ins. Indem. Co.*, 319 F.3d 205, 218 (5th Cir. 2003); *Castano*, 84 F.3d at 740). The Fifth Circuit instructs a

district court to "identify the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Id., see also Gene and Gene LLC v. BioPay LLC* 541 F.3d 318, 326 (5th Cir. 2008).

The following substantive issues will control the outcome of this case: (1) whether Rouse's violated FACTA; (2) whether Rouse's alleged violation was willful; (3) whether each class member is a "cardholder"; (4) whether each class member is a "consumer"; (5) whether each class member received a receipt that violates FACTA; and (6) the amount of statutory damages to be awarded to each class member. Plaintiffs argue the issues involving Rouse's liability (whether Rouse's violated FACTA and whether those alleged violations were willful) and the amount of statutory damages to be awarded each class member are common issues which predominate over any issues involving individualized inquiry.[24] Rouse's disagrees, and argues the predominate issues require individualized proof (whether the class members are "cardholders" and "consumers", and whether they received a receipt).[25] For the reasons that follow, the Court finds that the Plaintiffs have not satisfied their burden of establishing that common issues predominate.

Plaintiffs are correct that the issues concerning Rouse's liability may be resolved on a class-wide basis. As explained above, the software and hardware used by Rouse's to generate receipts is identical for all Non-Compliant Stores, allowing the question of whether or not Rouse's violated FACTA to be resolved as to all class members. Further, the issue of

---

[24]R. Doc. 86, pp. 18-19.

[25]R. Doc. 114, p. 21.

whether or not Rouse's alleged FACTA violations were willful turns on Rouse's conduct and thus may similarly be resolved as to all class members without the need for individualized inquiry. *See Gist v. Pilot Travel Centers, LLC*, 2013 WL 4068788, at *7 (E.D. Ky. Aug. 12, 2013).

Nevertheless, in the Fifth Circuit the identification of a common course of conduct and the ability of class-wide resolution of some issues does not necessarily satisfy the predominance requirement. *Gene and Gene, LLC*, 541 F.3d at 326 ("[C]ommonalities among class members will sometimes, but not necessarily always, allow for a class-wide basis for deciding predominant issues. Here, the district court simply noted a common course of conduct ... but did not determine ... whether the common course of conduct provided a class-wide basis for deciding the predominant issues of fact and law."). To determine whether a common issue predominates, the Court must "consider[] what value the resolution of the class-wide issues will have in each class member's underlying cause of action." *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1234 (11th Cir. 2000). Common issues of fact and law predominate if they "ha[ve] a direct impact on every class member's effort to establish liability *and on every class member's entitlement to injunctive and monetary relief.*" *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) (citations omitted) (emphasis added). The predominance requirement is met if the common issues are "more substantial than the issues subject only to individualized proof." *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 131 (2d Cir. 2010). Further, common issues predominate "where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria - thus rendering unnecessary an evidentiary hearing on each claim." *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 232 F.3d 32,

41 (1st Cir. 2003)(citing *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1112 (5th Cir. 1978)).

In the present case, the  issue of Rouse's liability may be resolved on a class-wide basis, but there are other substantive issues requiring individualized inquiry. After adjudication of the class-wide issues concerning liability, to recover under FACTA each individual class member still must show he or she is a "consumer," a "cardholder," and received a receipt. Each of these issues is one of *individual* inquiry, and none may be resolved on a class-wide basis. Thus, "any efficiency gained by deciding the common elements [of liability] will be lost when separate trials are required ... to determine each member's entitlement to the requested relief." *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 273 (S.D. Fla. 2003).  Accordingly, the issue capable of class-wide proof, Rouse's liability, cannot be said to predominate over the issues governing each individual class members' ability to recover under FACTA.  Moreover, as explained *infra*, these individual factual determinations cannot be accomplished by reference to Rouse's business records. Instead, evidence would have to be presented on each putative class members' claim. Plaintiffs have not carried their burden of showing that common issues predominate and warrant "adjudication through representation." *Unger*, 401 F.3d at 320.

Plaintiffs argue the issues requiring individualized inquiry involve "extremely rare instances" when: (1) an individual may have used another person's credit card; (2) business customers did not also shop at Rouse's for personal reasons; and (3) persons shopped at Rouse's but did not receive receipts.[26] However, Plaintiffs have not offered any proof to show these instances are infrequent, other than to highlight Rouse's training manuals which

---

[26]R. Doc. 133, p. 6.

instruct employees to provide customers with receipts.[27] More importantly, even if these instances are indeed infrequent, the Court is unwilling to assume all putative class members received a receipt, are "cardholders," and are "consumers." The frequency or infrequency with which class members prove these elements of the right to recovery does not lessen Plaintiffs' burden of proof as to these individualized issues.

The Court finds the common issues involving Rouse's liability for its alleged FACTA violations do not predominate over the individual questions of whether each class member is a "cardholder", a "consumer", and received a receipt.

### 2. Superiority

#### a. Factors to Consider

Rule 23(b)(3) also requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating superiority, the Court must consider the likely difficulties in managing the case, specifically "the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle and Jacquelin* 417 U.S. 156, 164, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1972). A finding that there is not a predomination of common issues of law and fact weighs against the superiority requirement. *Lewis v. Riddle*, 1998 U.S. Dist. LEXIS 20465 at *10 (W.D. La. Nov. 18, 1998).

Rule 12(b)(3) also lists four factors to be considered in determining whether class action procedure is superior: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any

---

[27]At the hearing for class certification, Rouse's put forth testimony that it markets to professional chefs and has business customers who shop at its stores and that some purchases made at Rouse's are by individuals who are not "consumers." Neither party introduced evidence indicating what proportion of transactions at Rouse's stores were initiated by business customers.

17

litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. Rule Civ. P. 23(b)(3).

The first three of the above-mentioned factors do not weigh in favor of or against class treatment in this case. The parties have not pointed to any special interests of the members of the class in individually controlling the prosecution of separate actions, the Court is unaware of any other lawsuits against Rouse's for FACTA violations, and the parties have not argued there is any desirability or undesirability of concentrating litigation in this forum. However, as highlighted by the Court's discussion of the predominance requirement, class treatment presents serious manageability concerns in this case.

### b. Manageability

Rule 12(b)(3) requires the court to determine how a trial on the merits would be conducted if a class were certified. *Gene and Gene LLC*, 541 F.3d at 326.The issues with respect to Rouse's liability (whether Rouse's violated FACTA and whether or not those alleged violations were willful) may be resolved through class-wide proof, but Rouse's has pointed to a number of issues requiring individualized factual findings. To prove entitlement to damages, each class member will have to prove he or she: (1) received a receipt in violation of FACTA, (2) is a "cardholder", and (3) is a "consumer." These issues require individualized proof and present serious manageability problems with certifying the class.   Considering Plaintiffs allege over 14 million transactions, individual trials on these issues are not feasible without wasting judicial resources.

In some cases class membership is based on objective criteria and may be

ascertained utilizing a defendant's business records.[28]  *See e.g., Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 128 (S.D.N.Y. 2011); *Akaosugi v. Benihana Nat. Corp.*, 282 F.R.D. 241, 255 (N.D. Cal. 2012). Plaintiffs argue individual class members in this case may identify themselves by signing a declaration regarding receiving a receipt from Rouse's from one of the Non-Compliant Stores during the class period.[29] Plaintiffs contend Rouse's business records will confirm each class members' entitlement to recovery and, as a result, individual trials would not be necessary.[30]

Contrary to the Plaintiffs' assertions, Rouse's business records cannot be used to confirm membership in this class. Plaintiffs concede Rouse's records contain only the following information: "(1) whether the card was a debit or credit card, (2) the date of the transaction, (3) the time of the transaction, (4) the amount of the transaction (dollars and cents), (5) the store number at which the transaction occurred, (6) the type of credit card (VISA, Mastercard, etc.), (7) the last four digits of the card number, and (8) first and last names for approximately ninety percent of the transactions."[31] Plaintiffs' concede Rouse's

---

[28]The inability to identify the class based on objective criteria also impacts ascertainability of the class, which is universally recognized as the "first essential ingredient to class treatment." *See, e.g. Bush v. Calloway Consolidated Consulting Group River City, Inc.*, 2012 WL 1016871, at *4 (M.D. Fla. March 26, 2012)("Class members need not actually be ascertained prior to certification, but each individual's class membership must be ascertainable at some stage in the proceeding.")(citations omitted).Thus, Courts have denied class certification or decertified a class in FACTA cases because the issues requiring individualized proof render the court unable to ascertain the contours of the class. *See, e.g. Rowden v. Pacific Parking Systems, Inc.*, 282 F.R.D. 581, 585 (C.D. Cal. 2012); *Hammer v. JP's Southwestern Foods, LLC*, 2012 U.S. Dist. LEXIS 102713 (W.D. Mo. July 24, 2012)(decertifying a class on the basis that claim forms could not be used to determine who was entitled to collect damages because the use of such forms would be "unwieldy"). Regardless of whether problems associated with individualized proof are analyzed under "ascertainability" or "superiority," these issues also render the proposed class unsuitable for certification in this case.

[29]R. Doc. 133, p. 8.

[30]R. Doc. 133, p. 8.

[31]R. Doc. 86-1, p. 22, citing Rouse's Corporate Deposition at 84-86.

records cannot be used to confirm even the names involved in approximately ten percent of the transactions.[32] In fact, the evidence reflects 795,834 of the transactions at the Non-Compliant Stores recorded during the class period are not associated with a name. [33]

Rouse's business records do not confirm whether a putative class member is entitled to relief. Based on the Rouse's records alone, it is impossible to determine whether a putative class member is a "cardholder," a "consumer" or received a receipt as required under the statute. Further, Rouse's business records do not indicate whether a specific purchase was made for a consumer or business purchase or whether the purchase was made by a "cardholder."

In sum, it is not self evident from Rouse's records the business/consumer nature of the transactions, whether the individual purchaser was a "cardholder," or whether the individual received a receipt. Because Rouse's business records do not contain the information needed to determine which putative class members meet the requirements for asserting a claim under FACTA, these individualized issues would have to be resolved at trial. Short of individual factual determinations at trial, the Plaintiffs have not identified a manageable method for resolving these issues.

Again, Plaintiffs argue the instances of transactions involving businesses or those involving individuals who are not the "cardholder" are rare. Although these instances may be rare and there may be a logical basis for inferring most of the transactions at the Non-Compliant Stores during the class period were executed by a cardholder for consumer purposes, the Court will not substitute a mere inference for Plaintiffs' requirement of

---

[32]R. Doc. 86-1, p. 22.

[33]Joint Exhibit 39.

*proving* these two elements. *See Lewis*, 1998 U.S. Dist. LEXIS 20465, at *16.

Because individual mini-trials would be impracticable and a waste of judicial resources, the Court finds that Plaintiffs have not carried their burden of showing a class action is a superior method for adjudicating this case.

### c. Effective Alternatives

Additionally, the remedies available for FACTA violations demonstrate there is an effective method superior to a class action for resolving this dispute. Generally, the most compelling rationale for finding superiority in a class action is the existence of negative value claims when the high cost of litigation outweighs the amount of recoverable damages. *Castano*, 84 F.3d at 748; *see also* 2 Newberg on Class Actions § 4:27 (4th ed.) ("When the claims of class members are small, denial of a class action would effectively exclude them from judicial redress."); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231. 138 L.Ed.2d 689 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

However, the remedies available for FACTA violations provide a sufficient incentive for individual suits. Willful violations of FACTA allow an individual to recover between $100 and $1000 as well as attorneys' fees, costs, and punitive damages. The possibility of recovering attorneys' fees removes a FACTA case from the negative value suit category. *See, e.g. Castano*, 84 F.3d at 748 (citing *Boggs v. Alto Trailer Sales*, 511 F.2d 114, 118 (5ᵗʰ Cir. 1975)). Other district courts have similarly found that the availability of attorneys' fees in FACTA cases renders individual suits superior to a class action. *See e.g., Rowden*, 282 F.R.D. at 586; *Hammer*, 2012 U.S. Dist. LEXIS 102713 at *4; *Grimes v. Rave Motion*

*Pictures Birmingham, LLC* 264 F.R.D. 659, 669 (N.D. Ala. 2010).

## C. Jurisprudence in Other Circuits

The Court is aware that some district courts outside this Circuit have certified similar FACTA claims as class actions.[34] The Court is also aware that a number of district courts have more recently declined to certify classes or decertified classes in FACTA cases because of the problems associated with predominance, superiority, and manageability.[35] In this Circuit, the court must determine how a trial on the merits would be conducted before a class may be certified. As highlighted by Rouse's, none of the cases certified in other Circuits has gone to trial. Because the overwhelming majority of FACTA class actions have settled after certification, Plaintiffs have been unable to provide concrete examples of how the problems associated with the manageability of the case have been cured in practice and have otherwise failed to carry their burden of showing that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### CONCLUSION

Because common issues do not predominate and a class action is not a superior method to adjudicate the case, the Court finds the requirements of Rule 23(b)(3) have not

---

[34] The vast majority of courts certifying classes in FACTA cases are located in the Seventh Circuit. *See, e.g., Armes v. Sogro, Inc.*, 2011 WL 1197537 (E.D. Wisc. March 29, 2011); *Beringer*, 2008 WL 4390626 (N.D. Ill. Sept. 24, 2008); *Halperin v. Interpark Inc.*, 2007 WL 4219419 (N.D. Ill. Nov. 29, 2007)*; Sanders v. W & W Wholesale, Inc.*, 2012 WL 3987629 (N.D. Ill. Sept. 11, 2012). Those cases all settled after being certified as class actions, thus, the Seventh Circuit Court has not opined on the appropriateness of class certification for FACTA cases.

[35] *See, e.g., Ehren v. Moon, Inc.*, 2010 WL 5014712 (S.D. Fla. Dec. 3, 2012); *Leysoto v. Mama Mia I, Inc.*, 255 F.R.D. 693 (S.D. Fla. 2009); *Grimes v. Rave Motion Pictures Birmingham, LLC*, 264 F.R.D. 659 (N.D. Ala. 2010); *Gist v. Pilot Travel Centers, LLC*, 2013 WL 4068788 (E.D. Ky. Aug. 12, 2013); *Hammer v. JP's Southwestern Foods, LLC*, 2012 U.S. Dist. LEXIS 102713 (W.D. Mo. Jul. 24, 2012); *Rowden v. Pacific City Parking Systems, Inc.*, 282 F.R.D. 581 (C.D. Cal. 2012).

been met. Accordingly, **IT IS ORDERED** that Plaintiffs' Motion to Certify Class be and hereby is **DENIED**.

New Orleans, Louisiana, this 2nd day of May, 2014.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**